Tallahatchie Compress & Storage Co. *v.* Hartshorn.

[88 South. 278, No. 21652.]

1. Evidence. *Parol agreement as to place of storage admissible where receipt silent.*

   Where a warehouse receipt for the storage of a bale of cotton is silent as to the place of storage, evidence is admissible to show a prior parol agreement which specifies the place of storage.

2. Warehousemen. *Warehouseman storing goods in place different from that agreed on does so at his own risk.*

   Where a warehouseman has contracted to store goods in a particular place, and breaches his contract and stores them in a different place, it is at his own risk, and he is liable for any damage or injury to the goods which occurs, even without his fault or negligence.

APPEAL from circuit court of Leflore county.

HON. S. F. DAVIS, Judge.

Action by Mrs. J. B. Hartshorn against the Tallahatchie Compress & Storage Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*Wells, Stevens & Jones,* for appellant.

The warehouse receipt in this case is the written contract and the sole evidence of the contract, and affirmatively exempts the defendant from liability for fire.

The adjudications are not altogether clear as to the legal effect of a warehouseman's receipt. By statute in many states, and especially in Mississippi (sec. 2295, Code of 1906), a warehouse receipt is made conclusive evidence in the hands of a *bona-fide* holder for value, that the property has been received and stored and entitles the holder to delivery of the property or the value thereof. These receipts are now recognized both by law and commercial usage as constituting negotiable or at least *quasi* negotiable instruments. They pass by delivery and the assignee may sue in his own name for the recovery of the property or for the value thereof.

The doctrine of assignability was early recognized by the supreme court of the United States. In *Gibson* v. *Stevens,* 8 Howard, 384, Chief Justice TANEY observes: "In the opinion of the court it (the certificate) transferred to him the legal title and constructive possession of the property; and the warehouseman from the time of this transfer became his bailee and held the pork and flour for him. The delivery of the evidence of title and the orders indorsed upon them was equivalent . . . . to the delivery of the property itself."

The doctrine has been followed by the state courts, and as stated by the supreme court of Ohio: "Receipts of this kind are like bills of lading, drafts, bills of exchange, etc., instruments *sui generis,* and as such from long and general use in commerce and trade have come to have a well

understood import among business men. Warehouse receipts operate as an estoppel against the maker and the latter cannot assert that he has not received the goods. It serves as a voucher in the hands of the consignee and is freely used in selling cotton or grain and in making pledges. We mention these general principles to emphasize the point which we here make, that the warehouse receipt is not a mere scrap of paper and is something more than a mere receipt. By law and by commercial usage it has become a species of contract. There is no question but that it is binding upon the maker, and there is no question but that the maker has the constitutional and legal right to enlarge or restrict his liability so long as he does not undertake to exempt himself against his own negligence. There is of course authority that a mere receipt can be contradicted by parol evidence, but if the receipt is something more than a mere receipt and something more than a mere acknowledgment of the possession of goods, it has the additional character of a contract. The necessities of trade and business suggest and require an abbreviated form for the instrument. In the case at bar the receipt affirmatively states on its face one bale of cotton marked as per margin heretofore, which they agree to deliver on return of this receipt and payment of all charges. Possession of this receipt evidences title of property, act of providence, fire and cold damage excepted. We take it that counsel will not seriously deny that this receipt undertakes affirmatively to exempt the company from loss by fire. The receipt identifies the cotton, states its quantity and weight and fixes upon the warehouseman liability for its safe return to the true holder of the receipt. No time limit is fixed for the bailment. The warehouseman does not expect to deal any further with the original bailor. The cotton compress company knows that this cotton will be worked out into the channel of trade and that this receipt will be presented by some purchaser or pledgee, if it is to be binding upon the holder. It is stated in 30 Amer. &. Eng. Encyclopedia of Law (2 Ed.), p.

78: "Although the primary function of a warehouseman's receipt is merely to acknowledge possession of the goods, yet it sometimes is given the additional character of a contract. If it is simply a receipt it may be explained by parol, but if it is a contract it stands on the footing of other contracts in writing and cannot be varied or contradicted by parol evidence. In *Tarbell* v. *Farmer's Mutual Elevator Company,* 44 Minn. 468, the court says:

This instrument embraces both a receipt and a contract. The first part of it is merely a technical receipt, while the last part of it, particularly that called conditions, is a contract. Where an instrument embraces both a receipt and a contract the receipt like any other, is open to variation by parol while the contract is as much guarded against such variation as if in a separate instrument. . . . . "The latter part of the instrument is a contract and cannot be varied by parol."

We respectfully submit that our own court in *Mortimore* v. *Ragsdale,* 62 Miss. 86, has construed a warehouseman's receipt as evidencing the contract between the parties. Our court, by Judge COOPER, said: "The legal title to the cotton was one thing, the right to require a delivery of it by warehouseman was another. The one might be acquired by a legal purchaser and what was a legal purchaser would be determinable by the rule of law; the other could be gained only by conformity to the contract of bailment, and these terms are disclosed by the face of the receipts."

Here the court uses the language: "These terms are disclosed by the face of the receipts, indicating especially what was the court's mind, and, we submit, expressly holding that the terms of the contract of bailment are evidenced by the warehouse receipt is also a contract. In *Tussing* v. *Haslett Cal.,* 54 L. R. A. 774, par. 2, of the head notes reads: "A notice printed plainly on the face of the warehouse receipt to the effect that loss by leakage shall be at the risk of the owner of the goods is a part of the contract."

In the course of the opinion the court said: "There is no public policy to be infringed by stipulations limiting their liability for loss or deterioration caused by inherent qualities of the articles stored or by defects in the facilities containing them. They may make such terms as they choose to impose as conditions of their contract. This would not exempt it from liability for leakage due to its fault, etc."

This we take to be good law in any jurisdiction, or at least in any civilized country. The right of contract is a sacred right, and there is no public policy or law of any kind that would stand in the way of a warehouseman limiting or restricting its liability, and certainly where the law itself does not impose upon a warehouseman a liability for a non-negligent fire, surely the parties can contract expressly against such an event or hazard. Having so .contracted, the contract between the parties cannot be contradicted, added to or varied by parol.

Our court had under observation the legal effect of a warehouse receipt in *Warehouse Co.* v. *Cotton Company,* 87 Miss. 228, 39 So., 417. The opinion sheds light upon the present inquiry and the language of Judge Truly, speaking for the court is in part as follows: "As to the warehouse receipt, representing the twenty bales of cotton involved in this controversy the Meridian National Bank is already shown to be a *bona-fide* holder. The receipt was acquired by the bank in due course of its dealing with a regular customer, for full value, and without notice of any understanding or secret equities which might have existed between the Star Compress & Warehouse Company and the Meridian Cotton Company. Under such state of case the warehouseman issuing the receipt for cotton deposited for storage or compressing cannot be permitted to assert, as against a subsequent *bona-fide* holder of such receipt, any defense unless predicated of fraud, except those expressly provided for in the face of the receipt. The express language of the receipt here under consideration precludes the assertion of the defense

by which the appellant seeks to defeat recovery. By it the Star Compress & Warehouse Company acknowledges the receipt of the cotton and binds itself to deliver the same, or pay the cash market value thereof, to the legal holder of this receipt, acts of providence, fire, and damage excepted. It further stipulates that the receipt shall be negotiable and transferable by indorsement, and then provides: No debt, demand, or set-off will be claimed against said cotton, except such as may be due by the holder at the time of presentation. The object of storing cotton and other commodities and accepting in lieu thereof receipts issued by warehousemen, is that the owners of the goods so deposited may have some evidence of ownership easily and readily negotiable, which may be dealt with without requiring repeated handling and actual delivery of a bulky commodity. The negotiability of such receipts and their commercial value is largely enhanced by the very fact that they are incontestable, and are dealt with as evidencing by their transfer the actual delivery of the commodity represented by the receipt. Their value as a convenient and safe method of commercial dealing and their ready negotiability would be diminished, if not practically destroyed, should the warehouseman issuing the receipt be permitted to assert as against subsequent holders private agreements with, or personal claims against, the original holder. In truth, the receipt in question practically embodied on its face the provisions now found in our statute law (See Laws 1904, ch. 89, p. 125) by which all warehouse receipts are made conclusive evidence in the hands of a *bona-fide* holder for value that the property mentioned in the receipt has been received, and entitles such holder to a delivery of the property so stored or deposited, or to the value thereof.

In *Leonard* v. *Dunton*, (Ill.), 99 Am. Dec. 569, the supreme court of Illinois expressly held that: "The warehouseman's receipt in that case must be held as a contract of the parties as to this wheat, and parol evidence to change its terms is inadmissable. The claim of appel-

lent, therefore, that it was understood and agreed that the wheat should be free of charge for a short time only cannot be allowed.".

It frequently happens that a document embraces both a receipt and a written! contract. This was the case in *Johnson* v. *Johnson*, 74 Miss. 549. Judge WHITFIELD referred to a number of authorities and held that the so-called receipt for money in that case not only was a receipt for the money, but a stipulation as to how it should be applied, and that parol evience to contradict its terms was not permissible.

*Gardner, McBee & Gardner* and *Alfred Stoner*, for appellees.

As to whether or not proof is admissible in this case, we. beg to quote just a few authorities along this line. One of the principal authorities, and one which we think will control, if there is any doubt in the mind of the court, as to the right to show where this cotton was agreed to be stored, is Ruling Case Law, recognized as a great authority. Ruling Case Laws says:

"PAROL EVIDENCE AS TO RECEIPTS.

"In regard to receipts in general, it is the established principle that a mere receipt, not used or designed to embody and set out the terms and conditions of a contract, does not preclude parol evidence of the agreement between the parties; while, on the other hand, a written contract, as a general rule, does preclude such evidence. So a warehouse receipt may recite so little of the agreement between the parties that it cannot rise to the dignity of a contract, and in such case evidence may be received of the terms of the contract, and when a warehouse receipt specified no particular place for the storage of the goods, evidence is admissible to show a prior parol agreement which does so specify." 27 R. C. L. 964; 3 Anno. Cas. 468; *Grenada Cotton Compress Co.* v. *Wm. Atkinson*, 94 Miss. 93.

This same authority also says: "The general rule that parol evidence is inadmissible to contradict, vary, or to explain the terms of a writing, has not application where an instrument constitutes a written contract not used or designed to embody and set out the terms and conditions of a contract." 10 R. C. L. 1025; 82 A. S. R. 771.

This court has well said in the case of *Baum* v. *Lynn,* 72 Miss. 932, speaking through Judge Cooper that: "The text books and decisions abound in confused and confusing writings upon the subject of the admissibility of parol evidence introduced for the purpose of showing the consideration of written contracts, or of proving what are called collateral contracts, i. e., contract not evidenced by the written one, but which constitute the consideration upon which the written one in turn rests, or which are separate and disconnected from the written one, not covered by nor inconsistent with its terms. Mr. Stephen, in his admirable digest of the law of evidence thus formulates the rule and its limitations: 'When any judgment of any court, or any other judicial or official proceeding, or any contract, grant or any other disposition of property, has been reduced to the form of a document, or series of documents, no evidence may be given of such judgment or proceeding, or of the terms of such contract, grant or other disposition of property, except the document itself, or secondary evidence of its contents in cases in which secondary evidence is admissible; nor may the contents of any such document be contradicted, altered, added to or varied by oral evidence; provided, that any of the following matters can be proved: (1) Fraud, intimidation, illegality, want of due exception, want of capacity in any of the contracting parties, the fact that it is wrongly dated, want or failure of consideration or mistake in fact or law, or any other matter which, if proven, would produce any effect upon the validity of any document, or any part of it, or which would entitle any person to any judgment, decree or order relating thereto. (2) The existence of any separate oral agreement as to any matter which is

not inconsistent with its terms, if from the circumstances of the case the court infers that the parties did not intend the document to be a complete and final statement of the whole of the transaction between them.' " *Baum* v *Lynn*, 72 Miss. 932.

We submit that under this rule laid down by Judge COOPER in *Baum* v. *Lynn*, that it is competent in this case to prove an oral agreement as to any matter on which a document is silent and which is not inconsistent with its terms.

In other words, we contend that the warehouse receipt alleged to be the contract in this case, is not a contract at all, and does not show all of the terms and conditions agreed upon between the parties, and that the introduction of parol testimony to show a prior parol agreement as to where the cotton would be stored, is not at all inconsistent with its terms and does not violate the rule against the instruction of parol testimony to vary or modify a written contract.

And again Mr. Wigmore in a splendid work on Evidence, Vol. 4, section 2432, says: "A receipt, i. e., a written acknowledgment handed by one party to the other, of the manual custody of money or other personalty will in general fall without the line of the rule, i. e., it is not intended to be an exclusive memorial. This is because usually a receipt is merely a written admission of a transaction independently existing, and like other admissions, is not conclusive."

American & English Ency. of Laws, says: "If a warehouse receipt is simply a receipt acknowledging receipt of goods, it may be explained by parol." 30 A. & E. Ency, of Law, page 78.

The identical questions involved in this suit, first, the liability of the bailor under a special contract of bailment, and second, the right to show by parol evidence the place of storage agreed upon before the delivery of the goods, were involved and decided in the case *McCurdy* v. *Walblom Furniture & Carpet Company*, 94 Minn. 326, anno-

tated in the third volume of A. & E. Anno. Cases, 468. All the questions involved here were discussed and decided in that case, the court holding:

"That agreement was made before the issuance of the warehouse receipt, in form indefinite as to place of storage. The conversation between the bailor and the bailee, taken in connection with the delivery of the goods and all immediate, subsequent transactions, prove a valid parol agreement, in which were specified, with sufficient definiteness, the parties, the consideration, the goods to be stored and the place of storage." *McCurdy* v. *Walblom Furniture & Carpet Co.,* 9 Minn. 326; 3 Anno. Cas. 468.

In other words, the court holds that the prior parol agreement can be shown where the receipt on its face does not show the place of storage, as in this case. This case of itself, we think is sufficient to sustain our position, but it has since been reaffirmed in the following cases: 128 Minn. 414, L. R. A. 1915 D. 476; 81 Kan. 146; 24 L. R. A. (N. S.) 1120; 71 Wash. 205; 67 Ore. 533; 23 Pa. Dist. 246; 191 Mich. 385.

We therefore say, with confidence that the court was correct in sustaining our demurrer to appellant's special plea setting up these warehouse receipts as contracts, and also that the court was not in error when it overruled appellant's objection to the testimony which was introduced, showing the parol agreement between appellee's husband and son and the superintendent of appellant's compress and warehouse, in which he, the superintendent, agreed, in consideration of this cotton being stored with appellent, to put all of her cotton as it was received in the brick compartment of appellant's warehouse, in which the proof shows it was safer and the insurance fifty per cent. less than in the wooden compartment.

Sykes, J., delivered the opinion of the court.

The appellee, Mrs. Hartshorn, plaintiff in the circuit court, sued the appellant compress company for the value

of seventy-four bales of cotton destroyed by fire. The declaration contained three counts. The first count alleged that the defendant had agreed with plaintiff to store her cotton in the brick compartment of the defendant's warehouse, and breached this agreement and stored the cotton in the wooden compartment, and that while the cotton was in the wooden compartment it was totally destroyed by fire. The second count alleged that plaintiff had been a customer of the defendant for several years, and was in the habit of storing her cotton in the defendant's warehouse. The plaintiff realized the danger of storing cotton in the wooden compartment, and had instructed the defendant to store her cotton in the brick compartment, where it would be safe from fire, and that the defendant, in recognition of this request, had stored plaintiff's cotton in the brick compartment, whereby a custom had arisen between plaintiff and defendant, in consideration of her patronage, and that it had therefore become the duty of the defendant to store all of plaintiff's cotton in the brick compartment, and that in violation of this custom defendant had stored the cotton which was destroyed in the wooden compartment. These two counts were for breach of contract. The third count was based in tort. It is unnecessary to state it because a nonsuit was taken as to this count by plaintiff. Because of this non suit it is also unnecessary to notice the demurrer of defendant to the declaration, which demurrer had been overruled by the court, because the taking of the nonsuit as to the count in tort left the declaration only stating a cause of action for breach of contract. There was a recovery by plaintiff in the circuit court in acordance with the declaration, and the appeal is here prosecuted by the defendant in the lower court.

The testimony for the plaintiff is to the effect that some time in August, 1917, about the time the plaintiff began picking cotton, her husband had a conversation with the superintendent of the defendant company, in which conversation plaintiff's husband stated to the superintendent

that plaintiff desired her cotton stored in the brick compartment of the compress; that the reason he stated to the superintendent why he wished it placed in the brick compartment was because the insurance rate was cheaper there than in the wooden compartment. He states also as a further reason why he wished it placed there was because it was safer from fire in the brick compartment.

The son of the plaintiff also testified that before any cotton was brought to the compress that year he had a conversation with the superintendent of the compress company in which he told the superintendent to put his mother's cotton in the brick compartment, and that the superintendent agreed to do so, and that it was because of this agreement that he stored the cotton with the defendant company; that the reason they wished the cotton stored in the brick compartment was because they did not expect to sell it as fast as it was gathered and they thought it was safer in the brick compartment.

This oral agreement to store plaintiff's cotton in the brick compartment is denied by the defendant's witnesses.

The plaintiff's testimony is to the effect that because of the promise to store their cotton in the brick compartment they delivered it to the defendant company. Upon receipt of a bale of cotton this company issued to plaintiff a warehouse receipt for each bale of cotton. These receipts are all similar, and are as follows:

"Tallahatchie Compress & Storage Company,
Tag No. ——.

"Greenwood, Miss.——.

"Have received from —— one bale of cotton.
Weight........marked as per margin hereof which they
agree to deliver upon the return of this
Marks.........receipt and payment of all charges. Acts
of Providence, fire and old damages excepted. Posession of this receipt evidences
Numbers......cepted. Posession of this receipt evidences
title of property.
Condition.....

"——————, Superintendent."

The testimony shows the plaintiff's cotton was actually stored in a wooden compartment, and while in a wooden compartment was destroyed by fire of an unknown origin; that, if the cotton had been stored in the brick compartment, it would not have been destroyed by this fire.

There are two principal contentions of the appellant which deserve our notice. The first is that the warehouse receipt in this case is the written contract and the sole evidence of the contract, and affirmatively exempts the defendant from liabilities for fire. As will be noted this warehouse receipt does not embody all of the terms of the contract of bailment. The amount of charges per month are not stated on this receipt, and it is also silent as to the place of storage. There is a clause contained therein which is evidently meant to exempt the compress company from loss by "acts of providence, fire and old damage excepted." It is the contention of the appellant that all testimony relating to the verbal agreement to store the cotton in the brick compartment of the warehouse was inadmissible because the receipt itself was the written contract. This receipt does not attempt to state all of the terms of the bailment. As a contract it is incomplete upon its face. That being true, it is competent to prove by oral testimony agreements relating to this bailment which did not vary, alter, or contradict the contractual parts of the warehouse receipts.

This rule is aptly stated in vol. 27, R. C. L. p. 964, par. 19, as follows:

"So a warehouse receipt may recite so little of the agreement between the parties that it does not rise to the dignity of a contract, and in such a case evidence may be received as to the terms of the contract, and when a warehouse receipt specifies no particular place for the storage of the goods, evidence is admissible to show a prior parol agreement which does so specify."

In the case of *Baum* v. *Lynn*, 72 Miss. 932, 18 So. 428. 30 L. R. A. 441, this court quoted with approval the rule laid down in Stephens on Evidence, when parol testimony could be introduced to prove what are called collateral

contracts; that is, contracts not evidenced by the written one, but which constitute the consideration upon which the written one in turn rests. In this rule Mr. Stephens states that parol evidence may be introduced to show:

"(2) The existence of any separate oral agreement as to any matter on which a document is silent and which is not inconsistent with its terms, if, from the circumstances of the case, the court infers that the parties did not intend the document to be a complete and final statement of the whole of the transaction between them."

This identical question is so decided in the case of *McCurdy* v. *Wallblom Furniture & Carpet Co.,* 94 Minn. 326, 102 N. W. 873, also reported in 3 Ann. Cas. 468.

The court was correct in permitting this oral testimony as to the agreement to store the cotton in the brick compartment.

It is next contended by the appellant that there can be no recovery, because the fire and the consequent loss by fire was not the proximate result of the breach of the contract complained of. Appellant relies upon the cases of *Wharfboat Ass'n* v. *Wood,* 64 Miss. 661, 2 So. 76, 60 Am. Rep. 76; *Railroad Co.* v. *Millsaps,* 76 Miss. 855, 25 So. 672, 71 Am. St. Rep. 543; and *Anderson* v. *M. & O. R. R. Co.* (Miss.), 38 So. 661. In these three Mississippi cases the gravamen of the offense was the negligence of the defendants in failing to ship cotton within a reasonable time or a negligent delay in shipping cotton. The cotton in each instance was destroyed by fire. These fires were not caused by any negligence of the defendants. In these cases the court held that the negligence of the defendants, that is, the unreasonable delay in the shipping of the cotton, was not the proximate cause of the injury to plaintiffs, but that the proximate cause of this injury was the fire.

In this case, however, we are presented with a different question. This suit is for the breach of the contract, the contract being to store the cotton in the brick compartment, and the breach consisting of its being stored in another compartment, namely, a wooden compartment. The

testimony of the plaintiffs shows that they made this agreement because they could get cheaper insurance when the cotton was stored in the brick compartment, and for the further reason that they knew it was a safer place for their cotton to be stored. The testimony shows that it was less apt to be destroyed by fire when in the brick compartment. In fact, the very testimony which shows that the insurance was cheaper in the brick compartment would lead one at once to believe that for this reason it was less apt to be destroyed by fire when stored in the brick compartment. There was a total breach of the contract of bailment. The great weight of authority in a case of this kind is that, where there has been a total breach of the contract of bailment, and the goods have been injured or destroyed, whereas if the contract had been complied with there would have been no injury or destruction, then the plaintiff is entitled to recover. A few cases can be found upholding the contrary doctrine. Among these few is that of *McRae* v. *Hill,* 126 Ill. App. 349.

When a warehouseman agrees to store goods in a particular place and complies with his contract, he is, of course, not liable for the loss of these goods, unless this loss be due to his negligence. This rule is elementary. But when he agrees to store goods in a particular place and stores them in a different place, he has breached his contract of bailment, and is therefore responsible for the return of the goods or for their value. He stores them in a different place at his own peril. This rule is thus laid down in Elliott on Contracts, vol. 4, section 3100:

"The warehouseman must comply with the contract of storage. If he has contracted to store goods in a specified warehouse, or in a particular place, and stores them in a different place, it is at his own risk, and he is liable for any injury which occurs, even without his own negligence."

To the same effect are 40 Cyc. 431; 27 R. C. L. 999; 6 C. J. 1111; *Wiley* v. *Locke,* 81 Kan. 143, 105 Pac. 11, 24 L. R. A. (N. S.) 1117, 19 Ann. Cas. 241. Copious notes

reviewing practically all of the decisions upon this subject are found in the last two reports.

Another late case upon the subject is that of *Mortimer v. Otto,* 206 N. Y. 89, 99 N. E. 189, reported in 31 Ann. Cas. 1914A, 1121. That case is quite similar to the one under consideration. In the Otto Case the agreement was to store certain household furniture in a specified room. In violation of this agreement they were stored in another building and destroyed by a fire which originated without any negligence on the part of the defendant. Among other things, it is said in the opinion that:

"They [the defendants] by their express agreement subjected themselves to the additional obligation that they would store the goods in a specified place. No degree of care or vigilance, short of complete performance would relieve them of that obligation. . . .

"The plaintiff and her assignor were depositing their property with the defendants, and a regard for its safety and security while in the keeping of the defendants was obviously within their contemplation and, it may . . . be assumed, known to the defendants. For the purpose of making effective that regard, they, with the permission and concurrence of the defendants, selected the precise place of storing. Fire is an ordinary and frequent agency of destruction or injury, and safety as against it was in the contemplation of the parties when they agreed that the property should be stored in the specified room. Had the property been there stored, the plaintiff and her assignor would have assumed all the risks of injury to it except those ordinarily imposed by law upon the defendants as bailees. When, however, the property was burned in the building in which the defendants in fact placed it, the consequent loss and damage was that which the parties apprehended and sought to avoid through the agreement that the property should not be there, and the defendants must indemnify the plaintiff therefor."

The plaintiff's testimony showed a special agreement to store her cotton in the brick compartment. The uncon-

tradicted testimony showed that the cotton was stored in the wooden compartment and there destroyed by fire, and that, had the cotton been stored according to contract in the brick compartment, it would not have been burned or damaged.

Under this testimony the plaintiff was entitled to recover, and the judgment of the circuit court is affirmed.

*Affirmed.*