OVERTON, J.
 

 This is a suit for damages, amounting to $2,848, growing out of a contract for the storage of certain household effects, belonging to plaintiff, including a valuable bedroom set. There was judgment for plaintiff for the amount prayed for, and defendant has appealed.
 

 The material facts in the case are as follows: In July, 1922, plaintiff having sold her home, and being desirous of storing for the summer her furniture and other household effects contained therein, requested defendant to send to her home a representative with the end in view of making arrangements, if possible, for the storage. Defendant sent a representative and a verbal agreement was entered into whereby defendant agreed to store plaintiff’s property, for a monthly compensation, in a room in its brick warehouse, located at Camp place, in the city of New Orleans.
 

 There was, among the effects to be stored, a valuable mahogany bedroom set, made at
 
 *464
 
 plaintiff’s instance for her own use by the Warldorn Company of New Orleans. Defendant’s representative recognized the value of this set and suggested that it be wrapped in specially prepared paper and crated in order to protect it against dust, insects, and other causes of injury. A verbal contract was entered into to wrap and crate the bedroom set. This was to be done within a reasonable time after receiving the furniture for storage. At the same time it was agreed that certain linens, and the like, would be placed in such pieces of the bedroom furniture, as were suitable to hold them, for safe keeping. When the agreement was made, plaintiff notified defendant that she would call for her household effects in the first week of October. '
 

 On September 19, 1922, without the knowledge of plaintiff, which was fully two months after the delivery of the household effects, and within approximately ten days from the time plaintiff said she would call for the effects, defendant moved the furniture with the linens, which were placed in it,
 
 to
 
 a warehouse conducted by it on Magazine street, constructed of concrete blocks, for the purpose of wrapping and crating it in a packing plant adjoining that warehouse.
 

 The next morning a part of the set was removed to the packing plant for the purpose of crating it, and within a short time thereafter, a fire which originated in a building occupied by others, which adjoined the packing plant, was blown by high winds on the premises, occupied by defendant, and spread so rapidly that, notwithstanding all efforts to control it, all the contents of the Magazine street warehouse and packing plant were destroyed, including plaintiff’s bedroom set and linens. The reason why defendant removed the furniture from its warehouse at Camp place to its warehouse on Magazine street was because at the former it had no packing plant, whereas, at the latter it did. Its purpose, in removing the furniture, was to wrap and crate it and then return it to its warehouse at Camp place.
 

 Defendant was, in no sense, responsible for the fire, nor was it guilty, after the fire startT ed, of any negligence in failing to save plaintiff’s furniture. If defendant is liable at all it is because it removed the furniture with its contents to a place other than the one agreed upon for its storage, at a time when, if it ever had authority to do so, that authority had ceased by reason of the delay in removing the furniture for the purpose of wrapping and crating it.
 

 It does not clearly appear where the furniture was to be wrapped and crated. We may assume, however, that defendant had the right to wrap and crate it at some proper place of its own choice, preparatory to storing it in the place agreed upon; but this, it was called upon to do within a reasonable time after receiving the furniture. That it was so called upon is apparent from the fact that the reason for wrapping and crating the furniture was to protect it from dust, insects, and from breakage. The furniture was not crated for shipment, for it was not to be shipped. In the very nature of things it was not contemplated that the wrapping and crating should be done some sixty days after the furniture was delivered, and within some ten days of the time when it was to be called for, for that would have defeated, or largely defeated, the very purpose of having the furniture wrapped and crated. In these circumstances, we think that defendant removed the furniture from the place agreed upon for its storage at a time when it had no authority whatever to do so, and thereby actively violated its contract.
 

 
 *466
 
 From the foregoing it would seem that a case is presented to us very similar in principle to one where the warehouseman stores property in a place other than the one agreed upon, and while there it is destroyed. The law in such cases is that “the warehouseman must comply with the contract of storage. If he has contracted to store goods in a specified warehouse, or in a particular place, and stores them in a different place, it is at his own risk, and he is liable for any injury which occurs, even without his own negligence.” Elliott on Contracts, vol. 4, § 3100. See, also, 27 R. C. L. p. 999, § 59 ; McCurdy v. Wallblom Furniture & Carpet Co., 94 Minn. 326, 102 N. W. 873, 3 Ann. Cas. 468 ; Mortimer v. Otto, 206 N. Y. 89, 99 N. E. 189, Ann. Cas. 1914A, 1121 ; Tallahatchie Compress & Storage Co. v. Hartshorn, 125 Miss. 662, 88 So. 278, 17 A. L. R. 974 ; Hudson v. Columbian Transfer Co., 137 Mich. 255, 100 N. W. 402, 109 Am. St. Rep. 679 ; Firestone Tire & Rubber Co. v. City Transfer & Storage Co., 115 Kan. 737, 224 P. 1117. The liability of the bailee also attaches where the property is disposed of, or used, in a manner not authorized by the contract. Jenkins v. Bacon, 111 Mass. 373, 15 Am. Rep. 33 ; Farkas v. Powell, 86 Ga. 800, 13 S. E. 200, 12 L. R. A. 397. These authorities, in principle, are applicable to the ease before us. Therefore, defendant having removed the furniture and its contents, at a time when it was not authorized to do so, to another place, where both were destroyed, is liable to plaintiff for the loss.
 

 We reach now the amount of loss for which defendant is liable. When the contract was entered into nothing was said as to a limitation of defendant’s liability, in the event the property should be destroyed, and defendant should be held liable therefor. However, after the contract had been entered into and the property delivered, defendant issued to plaintiff an itemized receipt, showing the property delivered. This receipt contains, among other clauses, in printed form, the following: “Our responsibility for any one piece or package (and contents of such package) is limited to the sum of fifty dollars, unless value is declared at time of securing rate and special charge is made for higher valuation.” Plaintiff’s attention was not called to this provision in the receipt. Since the contract was complete when this receipt was delivered, and since plaintiff’s attention was not called to the clause, it cannot be considered that she consented to such a change in her contract, and is not bound by the clause. Cf. Gott v. Dinsmore, 111 Mass. 45 ; Strohn v. Detroit & M. R. Co., 21 Wis. 554, 94 Am. Dec. 564.
 

 The bedroom set was hand carved and handmade, after a design of the time of Louis XVI, not kept in stock, but made at plaintiff’s reguest. It cost in 1915, when it was made, slightly over $1,200, and was in good condition when it was destroyed, save as to its finishing. At the time the set was destroyed, the cost of replacing it, with a new set was $2,470, due largely to the increase in the cost of labor. It cannot be said that there' was a market value for a set of this description. The only way, as observed by the trial judge, in which plaintiff may be placed in the position in which she was be: fore the destruction of the set is to place her in position to have á new set made, less such deductions as the evidence shows should be made. The evidence shows that in furniture of this description the finish should be done over again once in seven years. In the estimated cost of replacing the set there occurs an item of 20 per cent, for finishing. Deducting this 20 per cent, from the estimated cost of replacing the set, leaves $1,976, which should be allowed plaintiff for the furniture. No other deductions should be made. The
 
 *468
 
 furniture was of such, description as to last for more than one lifetime.
 

 The district judge, in his written reasons for judgment, found that plaintiff was entitled to the $2,470, necessary to replace the set, less the foregoing deduction, hut, evidently by oversight, the judgment failed to allow the deduction, and hence will have to be amended accordingly.
 

 The contention that before plaintiff can be allowed the cost of replacing the furniture it must appear that she has replaced it is not well founded.
 

 As to the remaining items destroyed, aggregating $378, we find no error in the judgment allowing them.
 

 For the reasons assigned, the judgment appealed from is amended by reducing the principal thereof from $2,848 to $2,354, and as thus amended it is affirmed, appellee to pay the costs of appeal.