Richard A. Gray was the owner of certain household goods, furniture and effects which were destroyed by fire in November 1943, when the warehouse of Security Storage Van Company on the corner of Conti and Chartres Streets in New Orleans in which warehouse the said effects were stored, was itself practically demolished by fire. The said Gray brought this suit against the said Security Storage Van Company seeking to collect the alleged value of the said articles which he fixed at $1265.90, and he made the following allegations: That on. December 10, 1942 he entered into a written contract with the said company under which, for a storage rate of $6.50 per month, the said company agreed that it would store the said goods in its warehouse at No. 230-240 Decatur Street, in New Orleans; that in violation of the terms of the said contract and without the knowledge of plaintiff, the said company stored his goods in another warehouse owned by it located on the corner of Conti and Chartres Streets instead of in the warehouse on Decatur Street designated in the contract; that the warehouse in which the said goods were stored was "not a safe building within which to store goods, was not fireproof and was, in fact, in a dilapidated condition * * *"; *Page 400 
that the act of the said company in storing the articles in the said warehouse "constituted an act of gross negligence and a breach of its contract with petitioner * * *."
To this petition, defendant filed a special plea of estoppel in which it made the following allegations of fact:
"That, at the time of the arrangement made between petitioner herein and defendant herein, for the storage of petitioner's household effects, said petitioner, in recognition and acknowledgement of his obligation so to do, under the law and the decisions of Louisiana, ordered and procured the issuance of a fire insurance policy by the General Insurance Company of America, in the sum of $500.00, which policy was issued to and received by said petitioner; that said petitioner paid the premium on said policy, calculated and based upon the said coverage of $500.00; that in the instructions for and application for said fire insurance, said petitioner expressly valued the said stored furniture and household effects at $500.00, and for that reason policy was issued and premium paid for coverage in that amount;
"That said insurance company has paid unto said petitioner, and said petitioner has received and retained, the sum of $500.00, the valuation placed by said petitioner upon said stored furniture and effects."
Defendant followed these allegations with the following allegation of law; "That, accordingly, said petitioner is estopped to assert a higher valuation for said furniture and stored effects than the valuation placed by him thereupon as aforesaid, and for which full payment has been made; and petitioner is especially estopped to claim herein or elsewhere the valuation of $1265.90 for said household furniture and effects."
This plea of estoppel was referred to the merits by the District Judge and defendant filed answer in which it admitted the contract of storage and that the goods had been destroyed by fire in its warehouse, and in which it alleged that plaintiff had applied for and received insurance on the said goods in the sum of $500, and in applying for the said insurance had valued the said goods at $500 and had been paid that amount by the insurer.
Defendant also denied the allegations as to the value of the goods and denied that it was in any way or to any extent liable to plaintiff.
After a trial below there was judgment in favor of plaintiff for $1,265.90 subject to a credit of $500, representing the amount paid by the insurer to the plaintiff. Defendant has appealed.
Plaintiff has not answered the appeal nor appealed independently from that part of the judgment which reduces the amount of the award to the extent of the $500 insurance money received by the plaintiff from his insurer.
The facts, except as to the value of the goods and as to the dilapidated condition of the warehouse in which the fire occurred, are not in dispute.
It clearly appears that the contract provided for the storage of the goods in the warehouse on Decatur Street and not in the warehouse on Chartres Street. And it also appears that plaintiff had no knowledge of the fact that his goods had not been stored in the warehouse designated in the contract and therefore cannot be said to have acquiesced in defendant's substitution of the other warehouse for the one designated.
[1] It follows from this that regardless of the cause of the fire and irrespective of whether the goods were as safe in the one warehouse as they would have been in the other, defendant, in putting the goods in a place other than that designated in the contract did so entirely at its own risk and, unless it is saved by its plea of estoppel, made itself liable for such loss as resulted to plaintiff from the destruction of his goods. In Williams v. Gallagher. Transfer Storage Co., Ltd.,170 La. 461, 128 So. 277, 278, the Supreme Court considered the legal effect of such an act by a warehouseman and said: "* * * The law in such cases is that 'the warehouseman must comply with the contract of storage. If he has contracted to store goods in a specified warehouse, or in a particular place, and stores them in a different place, it is at his own risk, and he is *Page 401 
liable for any injury which occurs, even without his own negligence.' Elliott on Contracts, vol. 4, § 3100. See, also, 27 R.C.L. p. 999, § 59; McCurdy v. Wallblom Furniture Carpet Co., 94 Minn. 326, 102 N.W. 873, 3 Ann.Cas. 468; Mortimer v. Otto, 206 N.Y. 89, 99 N.E. 189, Ann.Cas.1914A, 1121; Tallahatchie Compress Storage Co. v. Hartshorn, 125 Miss. 662, 88 So. 278, 17 A.L.R. 974; Hudson v. Columbian Transfer Co., 137 Mich. 255, 100 N.W. 402, 109 Am.St.Rep. 679; Firestone Tire Rubber Co. v. City Transfer Storage Co., 115 Kan. 737, 224 P. 1117. * * * "
It is conceded by plaintiff that when he delivered his goods to defendant he was advised that defendant would not be liable for loss by fire unless caused by or resulting from its fault and that therefore he had best protect himself by securing insurance against such loss. And it is conceded too by plaintiff that he, in writing, had requested defendant to have its insurer issue to him a policy or certificate of insurance in the sum of $500, and that in applying for such insurance he executed a document in which he fixed the value of his goods at $500. And it is conceded that plaintiff has been paid $500 by the insurer.
It is on these facts that defendant bases its plea of estoppel.
Defendant, however, concedes that the storage rate which it charged was not based on any valuation placed on the goods by plaintiff and that had he valued these goods at $1,265.90 which he has sued for, the storage rate which he would have paid would have been the same as that which he actually paid.
Defendant also concedes with equally commendable frankness that had plaintiff not insured his goods at all it would not, itself, have secured insurance on the goods and that even had it been advised that the value of the goods exceeded the valuation placed upon them by plaintiff when he applied for insurance, it, the warehouse company, would not itself have secured insurance on the difference in value between the actual value of the goods ($1,265.90) and the amount for which plaintiff insured them ($500).
It is obvious from these facts that by plaintiff's having placed a value of $500 on his goods for insurance purposes, defendant was not misled into doing anything which it would otherwise have done nor into failing to do anything which it otherwise would have done.
[2] It is well established in this state that a plea of equitable estoppel will not be sustained unless, by the actions of one of the parties, the other has been induced to prejudice his position by doing something which he would not otherwise have done or by failing to do something which otherwise he would have done. In Wadley v. Gleason, 192 La. 1052,190 So. 127, 129, the Supreme Court said: "One of the essential elements of a plea of estoppel is that the party pleading it shall have been induced by the false representation of the party against whom it is pleaded to act in a way in which he would not have acted but for the false representation. * * *" See also Wilkinson v. Macheca, 158 La. 183, 103 So. 733; Aronson v. Pailet, La. App., 173 So. 545.
[3] Plaintiff was under no obligation whatever to insure his goods at all. Therefore he was within his rights in insuring these goods for any amount not in excess of their actual value. When he chose to value them at $500 for insurance purposes he in no way affected his right to claim their additional value as against the warehouseman responsible for their loss.
Whether the lower court was correct in deducting from the total claim the amount paid to plaintiff by his insurer is a matter with which we are not concerned since the plaintiff has neither appealed nor answered the appeal. But see Ayres v. Wyatt, La. App., 185 So. 84; Dupuy v. Graeme Spring Brake Service, Inc., La. App., 19 So.2d 657; Hanton et al. v. New Orleans C. R. Light Power Co., 124 La. 562, 50 So. 544.
There remains then only the question of the value of the goods which were destroyed. It is shown that the articles consisted of household effects, tables, chairs, etc. They were several years old and in the warehouse receipt which was given by *Page 402 
defendant to plaintiff, it was noted in the case of most of the items that the article was marred, scratched or defective in some way. It is shown too by a witness produced by defendant, an expert as to values of used and secondhand furniture, that articles of household furniture depreciate very quickly in value. This witness was asked: "What is your opinion as an expert on the depreciation of furniture over a period of six years, the rate, or what is the worth at the end of the fifth or sixth year?" He answered: "Fifty percent, or less; not more than fifty percent."
There is only one item on which obviously an incorrect allowance was made and that is on the claim for the washing machine which was valued in the claim at $175. Plaintiff, himself, admitted that this washing machine had cost only $146.70 more than six years before and it is very plain from this that its value at the time was nothing like the $175 which was allowed in the judgment.
[4] We have no way of arriving at the actual value of these articles of household furniture which in 1943 were totally destroyed by fire. We think that in view of the testimony to which we have referred, and in view of the condition of the articles, we must reduce the claim for the washing machine to $146.70 and then allow a depreciation of 33 1/3% on all the items lost. Therefore, the amount of the award should be reduced from $1,265.90 to $825.07, subject to a credit of $500. We reach this conclusion because we do not think that the rule announced in Williams v. Gallagher Transfer Storage Co., Ltd., supra, concerning certain articles of furniture such as antiques and other objects which last indefinitely and do not depreciate, and are not obtainable on the open market, is applicable to ordinary household effects which depreciate immediately upon becoming used and, because of ordinary wear and tear, are worth much less after several years than when originally purchased, and may be readily replaced.
[5] The rule which we apply here is that which we found applicable in Gugert v. New Orleans Independent Laundries, La. App., 181 So. 653, 656, in which we said: "We believe that the just method of determining the value of used articles, which are not subject to disposal on the open market and which become disintegrated by wear and the lapse of time, is to deduct from their original price a reasonable sum for depreciation."
It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is amended by the reduction of the amount thereof to $825.07, subject to a credit of $500, with legal interest from judicial demand; plaintiff to pay costs of appeal, defendant to pay all other costs.
Amended and affirmed.