INZER, Justice:
This case is an action on an oral contract brought in the Circuit Court of Leflore County, Mississippi, by A. A. Mabus against Union Compress & Warehouse Company, a Delaware corporation, authorized to do business in this State. Plaintiff Mabus, appellee herein, alleged in his declaration a contractual debt of one dollar commission for each of 1,032 bales of cotton stored with Union Compress Warehouse Company, appellant herein, during the 1964 cotton crop season and demanded payment thereof. Issue was joined by the defendant’s denial of the obligation and the trial was had from which the jury rendered a verdict for the plaintiff Mabus in the sum of $1,032 and judgment was entered-thereon. From the judgment this appeal is prosecuted by Union Compress assigning as error various rulings of the lower court. We find no merit in any of these assignments and we affirm.
The jury by its verdict resolved the conflict in the evidence in favor of appellee and we state the facts accordingly. In 1962 appellant was operating a compress in Greenwood, Mississippi. Other compresses in that area had begun a practice of paying to cotton growers a commission on each bale that the growers stored with them. Appellant had not previously followed the practice but as the 1962 season approached it decided it would meet the competition. It adopted a corporate rule, referred to as Rule 19, which bound the corporation to the payment of a commission but reserved the right to decide the amount and the time of payment.
This warehouse plant will pay to the party shown as depositor on the warehouse receipt a commission of a uniform amount per bale on all bales of uncom *25 pressed (flat) cotton deposited for storage and compression at said warehouse. Not more than one (1) commission will be paid on the same bale. The decision of the Board of Directors of the Company as to the amount and time of payment of such commission shall be final.
This rule constituted a change of policy of which Union Compress desired to apprise its customers and potential customers. In order to effectuate this notice Union Compress had the new rule printed on leaflets and their agents and solicitors distributed them to all the potential customers in the area. McBee, who was appellant’s assistant superintendent at the Greenwood plant and was well known to the area’s cotton growers, was instructed along with appellant’s other solicitors to pass around the rule change prior to the 1962 season. Ap-pellee who lived in Tallahatchie County did not store any cotton with appellant in 1962 but had known McBee for many years. In 1962 appellee received a one dollar per bale commission from another compress. Appellant also paid one dollar per bale commission that year in accordance with its new policy.
Prior to the ginning season of 1963 McBee approached appellee in order to solicit his cotton. He told appellee that appellant would pay a commission and that it would be competitive with the other warehouses. Relying on this promise Ma-bus stored his cotton in Union Compress’ Warehouse. Appellant made good on its promise by paying appellee one dollar per bale for 1963. At the beginning of the ginning season in 1964 McBee once again approached appellee to solicit his storage business. Prior to sending out its agents that year, however, appellant had amended Rule 19 which then read as follows:
After determining net earnings at end of current fiscal year and the competitive situation, the Board of Directors of the Company will consider the payment of a commission of a uniform amount to the depositor shown on warehouse receipt issued by the warehouse plants covered by this tariff. The decision of the Board as to the time and amount of payment, if any, shall be final.
The rule now left it to the discretion of appellant’s Board of Directors whether to pay a commission or not. Appellant instructed its agents including McBee not to promise any commission for the 1964 season. It did not distribute leaflets with the amended Rule 19 to its customers, but a copy of it was posted on a bulletin board at the warehouse office along with the other compress rules and tariffs. Appel-lee had no actual knowledge of the rule change and McBee admitted that he did not inform appellee of the change when he went to solicit in 1964.
According to the testimony of appellee, which the jury accepted as true, prior to the 1964 cotton season McBee again conveyed the promise that appellant would pay a commission and be competitive with the other warehouses as to the giving of commissions. Pursuant to this promise Mabus delivered to appellant’s warehouse 1032 bales of cotton for storage and warehouse receipts were issued for each of them. The other warehouses paid a commission of one dollar per bale after the 1964 season, but appellant declined to pay any commission. Shortly thereafter appellant sold its warehouse at Greenwood and is no longer operating in that area.
At the trial appellee offered not only his own testimony as to the representations of appellant’s agent McBee, but also the testimony of other cotton growers as to similar representations by the same agent. This testimony was admitted over the vigorous protests of appellant.
The primary contention of appellant is that the trial court was in error in refusing to hold that the alleged representations of its agent, even if true, were no more than prior negotiations which were merged in the written contract of storage represented by the warehouse receipt, and *26 that this contract cannot be varied by parol evidence. With this contention, we are unable to agree because there were two separate agreements between appellee and appellant, one written and the other oral. The written contract was actually evidenced by 1,032 warehouse receipts. This was a bailment contract for the storage of cotton. The oral contract was a separate agreement that appellant would pay appellee a commission if he would store his cotton with appellant. When appellee delivered the cotton to appellant’s warehouse and stored it therein, he accepted appellant’s offer as extended by its agent, McBee. The only thing left to be done under the oral agreement was for appellant to pay appellee a commission to be competitive with what the other warehouses in that area paid to their customers. This agreement did not merge with the bailment agreement for the storage of cotton.
It is contended by appellant that the commission amounted to a rebate which would have the effect of varying the rates of the tariff for the storage of cotton which is by reference incorporated into the warehouse receipt. That this is not the case was brought out by counsel for the appellant on cross examination when he developed that the grower pays only the first month’s storage for the cotton. If he puts the cotton into government loan or sells it during the first month, he is only charged with the first month’s storage in the settlement. The proof in this case shows that the charge for storage for the first month was sixty-five cents in 1964. Thus, the grower by the selection of a commission-giving warehouse ordinarily would receive a bonus of thirty-five cents on each bale of cotton stored there. The holder of the warehouse receipt, usually the buyer of the cotton or the government, is required to pay all storage due on the cotton at the time it is removed from the warehouse. The commission arrangement, therefore, had nothing to do with the amount of the storage that the holder of the warehouse receipt was required to pay when the cotton was ultimately removed from the warehouse. Of course, this fact was recognized by the warehouses and evidently they decided to attract business by means that would inure to the benefit of the grower because he was the one who selected the place where his cotton would be stored. A reduction in tariff would not appeal to him as would an arrangement whereby he would gain the entire benefit, such as the commission. Whatever may be said about the merits of such agreements, they are not illegal and did not amount to a rebate in this case.
Another factor to be considered in determining whether the oral agreement merged with the written bailment contract is the nature of the written contract as evidenced by the warehouse receipt. A warehouse receipt is a negotiable instrument that contains the terms of the contract for storage. In order for this contract to maintain its negotiability, it must be free from added stipulations and agreements. It is clear from the evidence in this case that the form of the cotton warehouse receipt is dictated by the Department of Agriculture and the separate'agreements between the grower and the warehousemen are necessarily excluded from merger into this document in order to preserve its negotiability. In Tallahatchie Compress & Storage Co. v. Hartshorn, 125 Miss. 662, 88 So. 278, 17 A.L.R. 974 (1921), we found that a cotton warehouse receipt did not attempt to state all the terms of the bailment and that a separate agreement as to the place in which the cotton is to be stored could be proved, since it did not vary the contractual terms of the written warehouse receipt. Here the separate oral agreement between appellee and appellant in no way varied the terms of the warehouse receipt. Under these circumstances the presumption that the oral contract merged into the written contract does not prevail. It was not the intention of the parties that it do so.
*27 We hold that the oral agreement proven in this case is separate and distinct from the storage contract. It does not vary any of the contractual terms of the receipt and was of a nature that the parties did not intend and probably could not intend that it be merged into the written receipt or contract.
It is also contended by appellant that it cannot be held liable on a contract where its agent had no actual authority to make such contract. In Steen v. Andrews, 223 Miss. 694, 78 So.2d 881 (1955), we said:
The power of an agent to bind his principal is not limited to the authority actually conferred upon the agent, but the principal is bound if the conduct of the principal is such that persons of reasonable prudence, ordinarily familiar with business practices, dealing with the agent might rightfully believe the agent to have the power he assumes to have. The agent’s authority as to those with whom he deals is what it reasonably appears to be. So far as third persons are concerned, the apparent powers of an agent are his real powers. 2 C.J.S., Agency) §§ 95, 96. This rule is based upon the doctrine of estoppel. A principal having clothed his agent with the semblance of authority, will not be permitted, after others have been led to act in reliance of the appearances thus produced, to deny, to the prejudice of such others, what he has theretofore tacitly affirmed as to the agent’s powers. 2 C.J.S., Agency, § 96(c). There are three essential elements to apparent authority: (1) Acts or conduct of the principal, (2) reliance thereon by a third person, and (3) a change of position by the third person to his detriment. All must concur to create such authority. 2 C.J.S. Agency § 96(e). (223 Miss. at 697, 698, 78 So.2d at 883.)
It is apparent that appellant clothed McBee with apparent authority to enter into agreement with growers to pay the commission • when it had printed its Rule 19 in 1962 and had McBee and its other agents to use such material in soliciting business for its warehouse. Although appellant changed Rule 19 in 1964 and thereby revoked the authority of its agents to make such agreements, that fact alone is not sufficient to bind corporate outsiders, such as appellee. Bank of Holly Springs v. Pinson, 58 Miss. 421 (1880). Instead of printing and circulating this change of corporate policy as was done in the first instance, appellant, chose merely to post the rule on the bulletin board at its warehouse office. The question then arises as to whether the posting of the rule change was sufficient notice of the revocation of the authority of McBee to make the contract in question. We are told by text book writers that whether a certain action is sufficient notice of the revocation of authority of agents depends upon the circumstances of each case, and the end to be aimed at must be the method reasonably adopted to reach those people previously dealing with the agents who are entitled to receive notice. 1 Mecham on Agency 2d § 634 (1914); 3 Am.Jur.2d, Agency §§ 44, 45 (1962). Certainly one of the circumstances to be reviewed in determining the sufficiency of the notice of revocation of authority is the method that was used to set up the authority. In this case, appellant cannot be allowed to maintain that posting was sufficient when it had rejected that means as a method for setting up the authority in the original instance.
There can be no doubt that Mabus was justified in relying on the apparent authority of McBee to promise him that he would be paid the commission if he stored his cotton in appellant’s warehouse in the year 1964. The same promise had been made to him the year before by Mc-Bee and appellant paid the commission. Under these circumstances it was not unreasonable for Mabus to rely on the apparent authority of McBee to make the agreement.
*28 Furthermore, we are unable to see how it can be said that the reliance of Mabus on the apparent authority of McBee did not change his position to his detriment. Certainly if he had known that appellant had changed its policy relative to the paying of commissions, he would have stored his cotton in another warehouse where he knew it was certain that he would be paid a commission. The trial court instructed the jury at the request of appellant that McBee had no actual authority to bind appellant and unless it found from the preponderance of the evidence the three requirements set out in Steen, supra, had been met, then it was the duty of the jury to find for the appellant. There was ample evidence to support the finding of the jury on this issue.
Appellant assigns as error the action of the trial court in admitting testimony of appellant’s dealings through its agent McBee with growers other than appellee with respect to similar representations and promises made in the 1964 season and previous years. There are two issues to be determined in this case. The first is whether McBee made the agreement with Mabus as alleged and secondly, whether McBee had the apparent authority to make such agreement. We think that this evidence was admissible on the second issue. In Stonewall Life Ins. Co. v. Cooke, 165 Miss. 619, 144 So. 217 (1932) we held that where the authority of an agent to transact the particular kind of business is an issue, evidence of other and similar transactions by the agent for his principal is admissible.
Appellant also assigns as error the granting of and refusal of certain other instructions. While there may be some technical objections to the wording of the instruction complained of, we are of the opinion that when all of the instructions are read together they fairly state the law relative to the issues and we find no reversible error therein.
For the reasons stated we are of the opinion that there is no reversible error in the trial of this case and that it should be and is affirmed.
Affirmed.
ETHRIDGE, C. J., and JONES, PATTERSON and ROBERTSON, JJ., concur.