de la HOUSSAYE, Judge.
Plaintiff-Appellee, Albert T. George, as lessor of a camp located on Bayou Can-cienne Canal, filed suit seeking to obtain judgment against Defendant-Appellant, Gateway Barge Line, Inc., for damages caused by Appellant’s tugboat and barge to a pile cluster placed in the Cancienne Canal as protection for his wharf. On May 25, 1972, Mr. W. LeRoy Ardoin was proceeding along the Cancienne Canal when he saw a barge which had stopped against plaintiff’s wharf. Upon approaching the barge and the wharf, he saw that the piling in front of the wharf had been knocked down and had hit part of the wharf. The Captain informed him to tell the owner of the wharf of what had happened and he did so. He stated that the Captain informed him that *842 the barge and the tug belonged to Gateway Barge Company.
The trial court awarded judgment in favor of plaintiff for $1,785.00 as damages for the replacement of the pilings. From this adverse judgment, Gateway Barge Line, Inc. is appealing.
Appellant urges that the plaintiff did not have a permit from the United States of America to construct the wharf and the protective pilings in this navigable waterway and, because he does not have this permit, he has violated Sections 9 and 10 of the Rivers and Harbors Act of 1899 (33 U.S.C. Sec. 401, 402).[1]
Appellant’s theory is that since plaintiff violated these sections, his pilings are an obstruction to the navigability of the canal and, as such, it is to be deemed a nuisance thereby denying his claim against appellant.
Appellee testified that he had made extensive efforts to obtain all necessary permits. He obtained permits from the various levee boards, and the Louisiana Department of Public Works (TR. 31), but he was unable to obtain a permit from the U. S. Corps of Engineers, although he applied for one, because the canal was not considered to be under their jurisdiction. Mr. Charles W. Decker, Chief of the Permits and Statistics Branch for the Corps of Engineers testified that at the time of the accident, his department did not consider this waterway navigable or under their jurisdiction. He stated that it was not necessary for plaintiff to acquire a permit from the Corps of Engineers to obtain a permit to construct the protective pilings in his wharf. (TR. 65). The reason he assigned for not requiring or issuing a permit was because the Corps of Engineers considered privately owned waterways, even though there was navigation on them, not to be “navigable waters of the United States”, (TR. 66), and therefore, the Corps did not require permits. This was the regulation in effect at the time of the installation although the testimony shows it changed in September 1972 (TR. 67).
In light of testimony of plaintiff and of Mr. Decker, it is this court’s opinion that plaintiff has not violated the Rivers and Harbors Act of 1899 as he made every effort possible to obtain the permit from the Corps of Engineers. Additionally, the trial judge in his written reasons for judgment found that there was sufficient width between the piling clusters and the opposite bank of the canal for the tug to negotiate the passage between the pilings and the opposite bank. Appellant did not call the op *843 erators or deckhands of the tugboat to testify how the collision occurred in a defense to this suit. Under these circumstances, we agree with the trial court that it was unnecessary for plaintiff to acquire a permit from the Corps of Engineers and plaintiff cannot be held responsible for not having a permit. Upon’reaching this conclusion, there is no need to discuss the effect of a violation of the Rivers and Harbors Act of 1899.
Appellant further maintains that plaintiff did not bear his burden of proof in showing that he is the owner of the property which was damaged in the collision and that a collision actually occurred between the pile cluster and the vessel belonging to the Gateway Barge Line, Inc.
Plaintiff testified that he is the lessee of the property and, as the lessee, he erected the camp, the wharf, and the protective pilings for his use as a weekend retreat. No evidence was produced by defendant to show that plaintiff was not the lessee of this property nor was any evidence produced by defendant that plaintiff did not place the pilings in the Cancienne Canal. Louisiana’s Civil Code Article 506 states:
“All the constructions, plantations and works, made on or within the soil, are supposed to be done by the owner, and at his expense, and to belong to him, unless the contrary be proved, without prejudice to the rights of third persons, who have acquired or may acquire by prescription the property of a subterraneous piece of ground under the building of another, or any part of the building”.
In Marcellus v. David, 252 So.2d 178 (La.App. 3 Cir. 1971), this article was discussed. The court stated that since this article contained the phrase “. . . unless the contrary be proved . . . ”, the article clearly contemplates the ownership of buildings separate from the land. The court stated that:
“Buildings are presumed to belong to the owner of the soil, but a person claiming the ownership of a building on the land of another can overcome that presumption by proof to the contrary. Ouachita Parish School Board v. Clark, 197 La. 131, 1 So.2d 54 (1941); Meraux v. Andrews, 145 So.2d 104 (La.App. 4 Cir. 1962); and Haney v. Dunn, 96 So.2d 243 (La.App. 1 Cir. 1957).” Id. at 180.
The record reflects testimony by plaintiff that he is the owner of the pilings and no evidence was introduced by defendant to contradict his claim. Accordingly, the trial judge had ample evidence to support his conclusion that Mr. George had the right to file this damage suit for the damages to the pilings.
From the testimony of Mr. W. LeRoy Ardoin, who stated that he saw the tug against the pilings in the Cancienne Canal; that the pilings were knocked over; that the captain told him that the barge and the tug were owned by appellants and to inform plaintiff of this occurrence; and from the fact that the appellant did not call the captain to testify, the trial judge again had ample evidence in the record to support his finding that there was a collision between the vessel owned by Gateway Barge Line, Inc., and that this collision was the proximate cause of the damages suffered by plaintiff.
Appellant strenuously excepts to the damage award granted by the trial court. There is evidence in the record that this pile cluster had been damaged in the past. In 1968, plaintiff received a settlement of $1,200.00 for damages from another party to these pile clusters. Appellant points out that the timbers were not replaced but were merely shoved back into place by hand by the plaintiff. Plaintiff testified that the pilings were shoved over by a tug in 1968 but no structural damage was done to the pilings. He testified that in this case, the pilings were broken by defendant thereby necessitating the complete removal and replacement of the timbers.
*844 Mr. Elliot Boudreaux, an employee of Jeffer’s Construction Company who did the estimates for replacing the pilings testified that the cost to replace the pile clustering would be $1,785.00. He pointed out that the expense in replacing these pilings is not the cost of the pilings themselves, but the high cost of transporting and driving the pilings in the canal. He also testified that the cost of replacing the pilings would exceed the amount actually sued for by Appellee.
Appellant maintains that the plaintiff should not be placed in a better position as a result of the tort, and where there is damage to real property, the proper measure of damages is cost less depreciation, citing Newman v. Louisiana & Ry. Co., 19 So.2d 668 (La.App.2d Cir. 1944); Gray v. Security Storage & Can Co., Inc., 26 So.2d 399, (La.App., Orleans 1946), and Davis v. Roberts, 194 So.2d 772, (La.App. 1st Cir. 1967). In the trial court’s written reasons for judgment, it was not stated whether or not a credit for depreciation was granted to the defendant, but the court did point out that the defendant produced no evidence to contradict the correctness of the estimate submitted in connection with the present claim.
It is clear under our jurisprudence that the decision of the trial court should not be overturned unless a manifest error is shown to have been committed by the trial judge. Apparently, the court concluded that the amount awarded to plaintiff included a credit for any depreciation to the pilings. In light of the fact that no evidence was produced by appellant to contradict the cost of replacement of the pilings, we can find no manifest error of the court in awarding plaintiff the sum of $1,785.00.
For the foregoing reasons, the appeal by Gateway Barge Line, Inc. is dismissed at its costs.
Affirmed.

. Sec. 401. Construction of bridges, causeways, dams or dikes generally.
It shall not be lawful to construct or commence the construction of any bridge, dam, dike, or causeway over or in any port, road-stead, haven, harbor, canal, navigable river, or other navigable water of the United States until the consent of Congress to the building of . . . the same shall have been submitted to and approved by the Chief of Engineers and by the Secretary of the Army: Provided, That such structures may be built under authority of the legislature of a State across rivers and other waterways the navigable portions of which lie wholly within the limits of a single State, provided the location and plans thereof are submitted to and approved by the Chief of Engineers and by the Secretary of the Army before the construction is commenced: And provided further, That when plans for any bridge or other structure have been approved by the Chief of Engineers . . . from such plans either before or after completion of the structure unless the modification of said plans has previously been submitted to and received the approval of the Chief of Engineers and of the Secretary of the Army.
See Ifi%. The provisions of Section 401 of this title are made applicable alike to the completed and uncompleted portions of the Illinois and Mississippi Canal. Whenever the Secretary of the Army shall approve plans for a bridge to be built across said canal he may, in his discretion, and subject to such terms and conditions as in his judgment are eauitable, expedient, and just to the public, grant to the person or corporation building and owning such bridge a right of way across the lands of the United States on either side of and adjacent to the said canal; also the privilege of occupying so much of said lands as may be necessary for the piers, abutments and other portions of the bridge structure and approaches.