Plaintiffs, husband and wife, are seeking in this suit to recover damages alleged to have been sustained to household goods through the negligence of defendant with whom the articles were stored for hire.
A short time prior to June: 1, 1942, the plaintiff wife, Mrs. Dugan, engaged the defendant to remove her household goods from Leesville, to which point they had previously been taken by army truck, to Shreveport. The goods were transported in defendant's truck to Shreveport on June 1st, and were left at defendant's warehouse, aboard the truck, until the following morning; Mrs. Dugan, meanwhile, having arranged for the indefinite storage of the goods, except for a few designated articles, which were delivered to her by a driver employee of defendant on the morning of June 2nd. At the time of the delivery of these few articles, Mrs. Dugan paid the hauling charges and the first month's storage charge in advance, receiving from the driver, one Lee Holloway, written receipts evidencing the said payments.
The goods remained in storage until October, 1943, at which time Mrs. Dugan requested delivery to plaintiffs' home at 2924 Elm Street in Shreveport. Mrs. Dugan refused to accept delivery at this time because of damage to the furniture and furnishings, and, between the dates of October 11, 1943, and February 7, 1944, Mrs. Dugan and defendant were engaged in recurrent dispute with regard to the satisfactory repair of the furniture. Upon the latter date delivery of the furniture was finally accepted by Mrs. Dugan, repairs made at the instance of defendant being deemed satisfactory, but she continued in her refusal to accept delivery of two mattresses and four rugs, claiming these articles to have sustained damage as the result of defendant's negligence to such degree as rendered them unuseable, beyond repair or rehabilitation.
During the period noted defendant made numerous offers by way of attempts to settle plaintiffs' demands, but without success. It is argued on behalf of plaintiffs that these offers constituted admissions of liability, and on behalf of defendant that they should be construed only as attempts to adjust the differences between the parties for the purpose of retaining plaintiffs' good will and preventing litigation.
In addition to denying plaintiffs' claims, defendant asserted a reconventional demand in the sum of $133.50, representing amounts expended for refinishing, repairing and reworking the furniture and furnishings in the attempt to satisfy plaintiffs. *Page 636 
After a lengthy trial, there was judgment in favor of plaintiffs in the amount of $257, and further judgment rejecting defendant's reconventional demand, from which judgment defendant has appealed and plaintiffs have answered the appeal.
The record includes more than 400 pages of evidence filed with sharply conflicting testimony of witnesses for the respective parties. Able and industrious counsel for both parties have filed detailed briefs; each party charges the other with bad faith, and each questions the credibility of the witnesses of the opposing party.
The district Judge, in an ably written opinion, discussed at length the items of damages, the facts and the law upon the basis of which he arrived at judgment.
For the sake of brevity and clarity, we set forth below a table showing the specific items in dispute, the amounts claimed as damages by the plaintiffs with respect to each item, the award made by judgment of the district Court, and the claims of plaintiffs made in their answer to the defendant's appeal, which, of course, seeks judgment rejecting plaintiffs' demands and allowing defendant's reconventional claim:
 Claimed in
 Amount Recovery Answer to
 Items Claimed Allowed Appeal
 (a). Cost of reweaving rug $ 24.00 None $ 24.00
 (b). Cost of pad for rug 24.00 None Abandoned
 (c). 1 Spring-Air mattress 50.00 $ 27.50 $ 50.00
 (d). 1 Twin Bed size mattress 25.00 18.50 25.00
 (e). 1 Blue fiber rug 25.00 15.00 15.00
 (f). 1 9x12 rug 200.00 80.00 200.00
 (g). 2 broadloom throw rugs 75.00 16.00 75.00
 (h). Loss of rent of home 200.00 None 200.00
 (i). Rent of furnished quarters 150.00 Abandoned Abandoned
 (j). Inconvenience 100.00 100.00 100.00
 _______ _______ _______
 Totals $873.00 $257.00 $689.00

[1] There was no written contract of storage involved in this case. True, defendant has introduced a warehouse receipt, but it is clear that this receipt was mailed out to plaintiffs after the goods were stored and the first month's storage paid. As was noted in the opinion of the district Judge, the limitations of liability contained in the written receipt would not be binding on plaintiffs, and their only value is in support of the showing of usage and custom, which bears upon the defense of proper care. Plaintiffs denied receipt of this instrument, but this point is unimportant in view of the fact that it cannot be held to affect the contract of storage. Williams v. Gallagher Transfer Storage, 170 La. 461,128 So. 277.
[2] The attempt is made by plaintiff to show an oral agreement with employees of defendant, protecting plaintiffs against moth damage to the rugs in dispute, but this attempt has failed. Both employees named by plaintiff as having been responsible for the oral agreement stoutly deny any such guaranty. The clear evidence of existing custom, in the operation of warehouse and storage establishments, negativing guarantees of protection against moth damage is convincing.
[3, 4] In the absence of any special contract of storage, the general laws of deposit and the equivalent common law rules governing bailment for hire must govern a determination of this matter. The interpretations of Articles 2937 and 2938 of our Civil Code, regulating the care required of a depositary, clearly establish the rule of the exercise of ordinary care. Livaudais v. Lee She Tung, 197 La. 844, 2 So.2d 232; Munson v. Blaise, La. App., 12 So.2d 623.
[5] The record is convincing on the point that defendant took every reasonable precaution against moth damage, and it is established that defendant went beyond his duty of exercising ordinary care against damage by moths and rats.
[6] Specifically, plaintiffs claim damages to the itemized articles, rugs and materials, resulting from moths, rats and stains. It was established that the floor immediately above the one upon which these articles were stored in defendant's building was subleased by an automobile dealer, *Page 637 
who used the space for the storage of automobiles; that antifreeze solution in the radiators of these automobiles were changed and drained, in the course of which there was a certain amount of leakage. Though defendant denies the imputation of negligence by reason of these facts, there is no other satisfactory explanation of the unquestioned existence of stains, which caused a degree of damage to the articles in question. Regardless of defendant's knowledge vel non of the draining or changing of liquids in the automobiles, we think damage from such a source is only what might have been reasonably expected, and must therefore carry with it the ines capable conclusion of neglect on the part of the sublessee, for which defendant must assume liability as regards damages to goods stored for his depositors.
By memorandum of October 11, 1943, defendant agreed to repair or refinish the furniture to plaintiffs' satisfaction, and this agreement specifically included the obligation to clean and repair the rugs to such an extent as possible, while at the same time the memorandum disclaimed responsibility on account of moth damage.
Repeated searches and long study of the record fail to indicate to our mind any error of fact on the part of the trial Court. The Judge of the district Court painstakingly and laboriously analyzed the facts involved with reference to the character of damage and the fair allowance to be made therefor as between the parties. We observe no error in his findings nor in his computations of damage and the allowances made.
[7] Plaintiffs complain particularly of the disallowance of their claim for $200, representing the loss of rent of their home. This claim is predicated upon the fact that plaintiffs terminated the occupancy of their premises by tenants, who were paying $50 per month, in October, 1943, anticipating their own occupancy thereof. For four months, due to the failure of defendant to repair the damages to plaintiffs' household furniture, it is asserted that they were prevented from the use of their home, and, having terminated the lease of their tenants, were further deprived of the rental value of $50 per month.
In support of these claims, plaintiffs' counsel has cited American Jurisprudence, Volume 15, verbo "Property," Section 129, page 537, bearing upon right of recovery for the loss of use of specific property. In our opinion, this authority is not applicable, since it clearly bears upon loss of use of the property damaged or wrongfully detained. It must be borne in mind that plaintiffs have not claimed damages for the rental value of the property damaged, but for the loss of the rental value of the premises themselves. The choice of using or not using the owned premises was at plaintiffs' option, and we find no error in the ruling of the trial Court in disallowing this item.
Careful study of this case convinces us that the trial Judge has determined the facts without any manifest error, and has correctly applied the law.
Accordingly, the judgment appealed from is affirmed at appellant's cost.
KENNON, J., takes no part.