TUCKER, Judge.
This is a suit by Elzie Verdin against Quality Chevrolet Co., Inc., to recover the value, stipulated at being $1,590.00, of a 1966 Chevrolet automobile brought to the defendant and left for repairs. The automobile was repaired and subsequently stolen and wrecked such as to render it unfit for use with salvage value of $150.00. The automobile was repaired, and on May 22, 1969, plaintiff’s wife was notified that the automobile was ready. Mrs. Verdin went to pick up the vehicle but was not allowed to take the car in that she did not have sufficient funds to pay the cost of repairs. The evidence indicates that sometime between 12:00 noon on Saturday, May 24, 1969 and Monday morning, May 26, 1969, the automobile was stolen and was wrecked.
The defendant seeks an offset in the sum of $174.00 from the amount of judgment for the repairs that were done, if cast in judgment.
The record indicates that the defendant automobile repair firm has a policy for the protection of vehicles. Automobiles taken for repair are kept inside in the repair shop until the repairs are completed. After the repairs are completed the cars are also kept inside, if space permits. The building is locked and a burglar alarm is energized when the shop is closed. Testimony reveals that on occasion some automobiles must be left outside of the building because of a lack of space within. In this event the policy is that the automobiles are parked outside the building, the ignition keys removed and all doors locked, with the keys placed on a rack in the service department.
Certain employees of the defendant have access to the key rack. The trial court found that the policy for caring for defendant’s new cars and used cars was the manner in which plaintiff’s car was cared for.
*460 In addition to this, testimony reveals that police officers and patrol cars make routine inspections.
The trial court found that the defendant had shown by a preponderance of the evidence that it was not negligent and that its actions were those of a prudent administrator.
From the judgment of the lower court in favor of the defendant dismissing plaintiff’s suit, plaintiff has prosecuted this appeal.
The record discloses that on Saturday, May 24, 1969, Garland Aucoin, who works as a mechanic at the Quality Chevrolet, backed the vehicle outside leaving the keys in it. On that particular day the responsibility for enforcing the policy of checking the cars left outside was that of John Goss, Assistant Service Manager.
He testified that at the time he checked the car before closing for the day on Saturday that the keys were out of the car. He did not testify that he took the keys out, rather he said,
“Q. Were the keys on the car?
A. No, the keys was out the car. The keys was out. They was pulled out.
Q. And was the car locked?
A. The ignition was locked, I know definitely the ignition was locked. It had to be locked.
Q. Were the doors locked, do you know?
A. I don’t recall if the doors was locked.
Q. Do you generally lock the doors?
A. I usually do lock the doors, yes, sir. In this particular case, I don’t recall definitely.” (page 52 of tr.)
He also testified that the assumption was that the keys were on the key rack but that in this instance he did not check to see if the key was hanging on the rack at 12:00 o’clock.
The record also reveals that Mr. Heinke Trapp, the owner of the company, testified that vehicles left outside were left in an unfenced service area.
The record contains uncontradicted- testimony that the precautions taken by defendant company were the same as those ordinarily taken by repair agencies and automobile sales companies in the area.
The trial court correctly found that since defendant was to receive payment for services rendered he would properly be termed a compensated depository whose responsibility is that of an ordinary prudent man using the same diligence in preserving the deposit that he uses in preserving his own property. Louisiana jurisprudence is determined from the applicable provisions of LSA Civil Code Articles 1908, 2937 and 2938 which state:
1908 — “The obligation of carefully keeping the thing, whether the object of the contract be solely the utility of one of the parties, or whether its object be their common utility, subjects the person who has the thing in his keeping to take all the care of it that could be expected from a prudent administrator. This obligation is more or less extended with regard to certain contracts, the effects of which, in this respect, are explained under their respective titles.”
2937 — “The depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property.”
2938 — “The provision in the preceding article is to be rigorously enforced:
1. Where the deposit has been made by the request of the depositary.
2. If it has been agreed that he shall have a reward for preserving the deposit.
*461 3. If the deposit was made solely for his advantage.
4. If it has been expressly agreed that the depositary should be answerable for all neglects.”
The trial court also correctly states that the principal issue before the court is whether the defendant established, by preponderance of the evidence, “* * * that he has acted as a prudent administrator and used the same diligences in preserving plaintiff’s property as he used in preserving his own property?”
Plaintiff-appellant cites the case of Lumbermen’s Mutual Casualty Co. v. Wallace, 138 So.2d 247 (La.App., 4th Cir., 1962) being analagous to the facts presented in support of their position. They cite as well the cases of Home Insurance Co. v. Southern Specialty Sales Co., 225 So.2d 776 (La.App., 4th Cir., 1969); McConnell v. Travelers Indemnity Company, 172 So.2d 341 (La.App., 4th Cir., La.1965).
Defendant contends that there is no evidence indicating any negligence on the part of the defendant and point out the apparent truism that the policy of Quality Chevrolet, Inc. was precisely the same procedure used by other car dealers in the general area.
Defendant cites the old leading case of Miller v. Hammond Motors, Inc., 40 So.2d 29 (La.App., 1st Cir., 1949) which still correctly states the rule in Louisiana as follows :
* * * the universal rule is that “where the relation of bailor and bailee for hire or mutual benefit subsists, it devolves on the bailee to use ordinary care and diligence in the safeguarding of the bailor’s property, and he is answerable for loss or injury resulting from failure to exercise such care, or, as otherwise variously stated by the courts, loss or injury due to his negligence, or ordinary negligence; but he is not responsible for losses not occasioned by the want of such care or the ordinary negligence of himself or his servants unless he has violated his contract. Thus * * * a bailee who is not negligent is not, as a general rule, liable for loss or injury due to inevitable accident, theft, forcible taking and like causes, although negligence may be predicated in such cases upon failure to take such preventive measures as the exercise of the required degree of care would demand.” 6 Am.Jur. 333, Section 248. See also, 6 Corpus Juris 1121, Section 61; 8 Corpus Juris Secundum, Bail-ments, 269, § 27; and 3 Ruling Case Law 96, Section 23. Our jurisprudence is to the same effect.’ See also Scott v. Sample, 148 La. 627, 87 So. 478; Dugan et al. v. Central Storage and Transfer Company, La.App., 23 So.2d 634.”
There does not seem to be much disagreement on the factual situation. The cases cited by learned counsel for both plaintiff and defendant quote the same law. The sum and substance of the law is that the degree of care required is the same degree of care that a bailee uses to preserve his own property.
It might be observed that this view of the law is almost universal in jurisprudence throughout the country.
However, as has been stated in 8 Am.Jur. 2nd 214, “In general the above view of the law has been abstractly stated, and where it has been applied, it seems that the diligence used by the bailee in the oversight equally of the deposit and of his own deposit corresponds with the diligence to which, in the circumstances of the particular bailment, the law held him bound.” See First National Bank v. Graham, 79 Pa. 106; Lloyd v. West Branch Bank, 15 Pa. 172.
What then is the responsibility of the bailee ? What is the degree of care that an ordinary prudent man would use for the protection of his own vehicle?
The jurisprudence does not succinctly list the standard of care which a reasonable, prudent man would follow. *462 However, one could reasonably assume that a person should (1) lock his car; (2) take his keys; (3) keep control of or know where the keys are; (4) and leave the car in as safe place as possible.
This does not seem to be an unreasonable list.
An examination of this list together with the actions of the defendant would indicate whether the burden was upheld.
Was the Verdin car locked? Mr. Goss was unable to state.
Were the keys taken? Mr. Goss was only able to testify that they were not in the car when he checked it. He did not say or indicate that he had any curiosity about who had taken the keys or where they were.
So it would seem that the defendant failed to do what the ordinary prudent man should do according to our department of police and safety councils.
Was the car left in as safe place as possible ? This is doubtful, too. The owner of the company testified that the car was left in an open, unfenced lot, testifying that even if there was a gate cars could be stolen and further pointing out that this was the same degree of care that other automobile dealers used in the area.
This seems to beg the question. It is doubted seriously that this is true. The landscape is too full of high chain link fences, even with barbed wire across the top and gates with locks on them to believe that the defendant was using the ordinary degree of care.
The testimony reveals that the defendant did not make sure that the car was locked, did not make sure that the keys were removed, did not make sure that the keys were secure, did not make sure that the automobile was stored in a safe place. In short, the defendant did not fulfill its burden of proving that he used ordinary and reasonable care in the preserving of the property of the plaintiff.
For the foregoing reasons, the judgment appealed from is reversed and it is hereby ordered that there be judgment in favor of Elzie Verdin and against the defendant in the sum of $1,440.00, less and except the cost of repairs to the vehicle in the sum of $174.00, plus interest from date of judicial demand and all costs of these proceedings to be paid by defendant.
Reversed and rendered.