W. S. McCURDY v. WALLBLOM FURNITURE & CARPET COMPANY.[1]

March 10, 1905.

Nos. 14,129—(189).

**Removal of Goods Left with Bailee.**

> Where goods are stored in a warehouse specifically agreed upon, and are removed therefrom to another place by the bailee without notice to or knowledge by the bailor, and those goods are there destroyed by fire, the bailee is responsible to the bailor for their market value in an action of conversion, or in the nature of conversion.

[1] Reported in 102 N. W. 873.

**Implied Contract.**

That parties to an agreement intend storage at a stated place, and contract with reference to storage there, and that the goods are there delivered by the bailor and stored by the bailee, amounts in law to an agreement to store at such place.

**Warehouse Receipt.**

In this case, *held*, that a conventional warehouse receipt specifying no particular repository was not the contract, and that the actual prior parol agreement, in connection with the dealings of the parties, shows a contract to store at a particular place.

Action in the district court for Ramsey County to recover from defendant $600 for conversion of household goods. The case was tried before Olin B. Lewis, J., and a jury, which rendered a verdict in favor of plaintiff for $350. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Philip Gilbert,* for appellant.

*Durment & Moore,* for respondent.

JAGGARD, J.

The pleadings in this case were framed to present issues in conversion. The plaintiff and respondent took his goods to the retail furniture store of the defendant and appellant for storage. The charge was agreed upon. The defendant explained that his warehouse, in which the goods were to be stored, was situated in another part of the city. With this knowledge, the plaintiff wanted the defendant to take his goods and store them, to which the latter assented. Thereupon the plaintiff took the goods in wagons hired by himself to the warehouse aforesaid, and saw them stored therein. At the time the goods were delivered, the party who had charge of the warehouse asked the plaintiff whether he (the latter) had insurance on his goods. The reply was that he had not, but that he should take it out. Thereafter the plaintiff was given a warehouse receipt in conventional form, which provided for storage generally, but did not specify where the goods were to be kept. Subsequently the defendant changed the location of its place of business to another point in the vicinity of its original retail store, and seems to have abandoned its other establishments.

To the new place it transferred the goods in question, where they were destroyed by fire. There was no proof that because of such removal the plaintiff lost insurance. The jury returned a verdict for the value of the goods. From an order denying a motion for a new trial, defendant appealed.

1. Where goods, which have been removed by the bailee from an agreed to another place of storage without notice to or consent of the bailor, are destroyed by fire, the bailee is liable in an action at law for the reasonable market value of the goods. Schouler, Bail. § 106. Such a state of facts makes out "a case of the defendant having taken the plaintiff's goods to a place where he had no right to take them; therefore he must pay for their loss." Stevens, J., in Lilley v. Doubleday, L. R. 7 Q. B. Div. 510, more fully reported in 44 L. T. (N. S.) 814. And see St. Losky v. Davidson, 6 Cal. 644; Lane v. Cameron, 38 Wis. 603; Pigott, Torts, 353. The bailor is entitled to the safety, to the convenience, and to any and every advantage of the agreed location. He is entitled to unchanged hazards as to things priceless to him personally, as well as to things only merchantable, and to insure or not, according to his judgment with reference to the place agreed. The bailee may not, to suit his own whim or interest, change his place of business and move the goods to a new place, and, if the goods be destroyed, refuse the bailor both his property and its value. If the rule were otherwise, how would the physical extent of the justifiable removal be determined? Would the bailee be allowed to remove the repository a mile—out of the city, out of the country? The conventional requirements of the law, as to a bailee's care, would not contain the limitations. If, as here, the bailee no longer conducts the place at which the goods were received, it would be unreasonable to require the bailor to institute search to find his belongings. The point at which the bailee would be required to deliver the goods on demand might then have to be fixed by construction.

Any other rule than that here applied would serve no useful purpose, but would easily conduce to misappropriation and fraud, put a premium on craftiness, jeopardize the property of the ordinarily prudent man, and wholly fail to afford adequate protection to the community in general.

It is not so clear that such conduct constitutes conversion under any of the three current and similar tests of the existence of that form of legal wrong. The liability cannot be fairly based upon intention, actual or constructive, to assert title in the person having derivative possession against the person having primary possession, Innes, Torts, 198, for there is no act of dominion tantamount to the exercise, exclusion, or impairment of ownership. Nor can that liability rest securely upon asportation or detention, without authority, but with intent to convert to the use of a person other than the true owner, Fouldes v. Willoughby, 8 M. & W. 540; for, properly speaking, there is no intention to convert to the use of any person. Nor can this liability be said to fall strictly within the rule laid down as a whole by the cases, which have developed the original and narrow remedy of trover into a specific tort based on general and broadening principle of legal responsibility, viz., that the act of conversion is the distinct and unauthorized assumption of the powers of the true owner. In the leading authority on this subject, controlling the instant case, all the judges expressly evaded recognizing in such a case an instance of conversion. Lilley v. Doubleday, supra. There is in this unwillingness perhaps a mental consciousness like that of Lord Bramwell—"I am never very confident as to what is or is not conversion." National v. Rymill, 44 L. T. 767, 1 Can. L. R. 145. There is a nearly analogous class of familiar cases which are regarded as laying down the rule that appropriating an article in bailment to a different use than that agreed on is a conversion. Story, Bail. §§ 232, 233, 241, 413, 413a; Ball, Lead. Cas. Torts, 388. Thus, if a man hire a horse to ride to York, and he rides him to Carlisle, this is a conversion. Isaack v. Clark, 2 Bulst. 306; Bryant v. Wardell, 2 Exch. 479; Lee v. Atkinson, Yelv. 172; Martin v. Cuthbertson, 64 N. C. 328; Redfield, Bail. § 650. These cases, like the case at bar, involve a deviation from the agreed place and an unauthorized use. The wrong here complained of might also be regarded as an unlawful keeping. Clerk & L. Torts, 176. The most satisfactory classification of this liability is, however, to put it under the fourth class of cases in conversion as arranged by Mr. Pollock, viz., cases where there is not a conversion, but an action (formerly a special or innominate action on the case) lies to recover the actual damage. Pollock, Torts, 298.

The measure of damages ordinarily and here is the reasonable market value of the goods destroyed. Reason and all authorities concur that the rules governing are those of conversion, and not those of a breach of contract, as laid down in Hadley v. Baxendale, 23 L. J. Exch. 179. But see 3 Smith, Lead. Cas. 456, note to Eng. Ed. 1903. There is an uncertainty whether Davis v. Garrett, 6 Bing. 716, a leading authority in this connection (Story, Bail. note to § 413a; Lilley v. Doubleday, supra), is a case in tort or on the contract; but, as to the extent of recovery, the damages usual in conversion are demonstrated therein to be proximate by unanswerable reasoning.

2. The question, whether or not, in a particular case, the agreement was general as to place of storage, or was specific, may be for the jury. In Lilley v. Doubleday, supra, the jury found for the plaintiff on this point. The court may, upon evidence, determine as a matter of law that there was no agreement to store in the particular place where the property was delivered by the owner, as in Bradley v. Cunningham, 61 Conn. 485, 23 Atl. 934, a case distinguishable, but not in a very satisfactory way, from the one under consideration. However this may be, we are of the opinion that in this case, upon its own peculiar facts, the learned trial court properly charged the jury, as a matter of law, that the bailee obligated himself to keep the goods stored in the building in which they were received, because the undisputed facts show a specific agreement to store in a designated place. That agreement was made before the issuance of the warehouse receipt, in form indefinite as to place of storage. The conversation between the bailor and the bailee, taken in connection with the delivery of the goods and all immediate subsequent transactions, prove a valid parol agreement, in which were specified, with sufficient definiteness, the parties, the consideration, the goods to be stored, and the place of storage. The name of the bailor was not expressly mentioned, but he was just as obviously a party to the contract. The place was expressly mentioned and involved in the execution of the contract, and is just as much a part of its terms as the consideration.

If an owner of exactly similar houses in a block shows a prospective lessee a particular one, the rental is agreed on, and the lessee is helped by the owner to put his household goods into that one, the owner cannot move those goods to another house equally safe and desirable,

and escape legal responsibility by saying that no specific house was designated. The inclination of courts toward implication for the benefit of the bailor in cases like the present one is well illustrated by Davis v. Garrett, supra, where it is held that "the law does imply a duty of the owner of a vessel to proceed without unnecessary deviation in the usual and customary course," and that if, because of such deviation, the cargo is lost, the ship's owner is liable. And see Crosby v. Fitch, 12 Conn. *410.

Other assignments of error present no question calling for especial mention.

Order affirmed.