C. A. PENNINGTON v. WARREN L. STYRON, T/A MOREHEAD CITY YACHT BASIN.

(Filed 12 April, 1967.)

**1. Boating; Bailment § 1—**
    An agreement under which one party stores the boat of another and looks after it during the winter creates a bailment.

**2. Boating; Bailment § 3—**
    A party keeping and looking after a boat during the winter months under agreement with the owner is not an insurer but is liable for injury to the chattel as a result of ordinary negligence; but the fact that he does not return the boat to the owner at the end of the term or returns it in damaged condition makes out a *prima facie* case of actionable negligence.

**3. Bailment § 3—**
    If the bailee agrees to store the chattel in a definite place and breaches the agreement by moving the chattel to some other place, the bailee

assumes absolute liability for damage to the chattel occurring at the place he removed it, irrespective of the question of negligence.

**4. Same;    Boating—**

The evidence tended to show that plaintiff left his boat with defendant under an agreement that defendant would keep it and look after it during the winter months. There was conflicting evidence as to whether defendant had the right under the agreement to remove the boat from one of defendant's slips to another, and the evidence disclosed damage to the boat while it was in a slip to which defendant had removed it. *Held:* The bailee was absolutely liable, regardless of negligence, if the removal of the boat was in breach of contract, and an instruction making defendant's liability in such instance dependent on negligence to any degree, must be held for error.

**5. Customs and Usages—**

In order for evidence of a custom to be admissible in evidence, the party relying on the custom must show that the other party had actual knowledge of the custom or that the custom was so general that the other party is presumed to have had knowledge of it.

APPEAL by defendant from *Mintz, J.,* at October 1966 Civil Term, of CARTERET Superior Court.

The plaintiff C. A. Pennington was the owner of a 34-foot yacht called the "Bob Cat." During the winter of 1964-65 he used the facilities of defendant Styron to store his yacht, it being the duty of the defendant to keep it tied up, pump rain water out of it, and generally to protect it during the winter. During that winter the defendant moved the yacht from one slip to another as the demands of his business required. Some slips would accommodate larger boats than others, and some had covers or roofs over them, while others were open.

About the first of October, 1965, the plaintiff again took his boat to the defendant's yacht basin and it was placed in an open slip which he said he had rented, with the lines exposed for tying up the boat. It was identified by a little tag with plaintiff's name on it. The plaintiff left Morehead City about 4 October, telling the defendant he was not finally storing the boat for the winter, but expected to come back to do some Fall fishing. Within a day or so a yacht came to the defendant's basin which was too large to be berthed in a covered slip, and the defendant then moved the plaintiff's yacht into a covered slip so as to leave the open berth available for the larger boat.

On 7 October, 1965, a heavy rain, accompanied by high gusts of wind, caused the cover of the slip to which plaintiff's boat had been moved to fall in, doing substantial damage to the boat.

The plaintiff offered evidence tending to show that the roof

over the slip had a considerable "swag"; that the roof was in a straight plane; it had a sway similar to the curvature of a rocking chair rocker * * * "For several days after it rained the wind would continue blowing water off the roof. The swaying condition ran the full depth and the full length of the trusses. At least two of the trusses that ran fore and aft of the building did have a 'swag'. Several days after we had a rain the water that would run off the roof would keep running off the roof like it was still raining * * * it would come down in quite a sheet when a gust of wind would come along. Mr. Styron pointed out to me (the plaintiff) where the area collapsed * * * and he told me my boat was under the very spot where the roof caved in * * * part of the roof was still hanging down in the area in the place where my boat was. I noticed that the center piling had sunk about 3 feet and that was evidently the place it broke in two that was on the boat * * * (The piling) that I stated had settled was definitely a roof support. It had settled approximately 3 feet in the very center of the place where it had collapsed. Mr. Styron told me the water could not get off the roof and it did not stand the weight, and that is what collapsed the building."

On cross-examination he said: "The Bob Cat stayed under the covered shed of Morehead City Yacht Basin practically all of the winter preceding the collapse of the shed. It stayed there at my request. When it stayed under the shed during the preceding winter, I did not pay any more rental than I would have paid had the vessel stayed out in the open dock. I had had to beg Mr. Styron for several months to get permission to put it under this shed and he left the boat under the shed as a favor to me. I told him I wanted to put it in the shed because I wanted to work on it; and he did not charge any extra price and allowed me to put it under the shed."

The defendant's evidence was to the effect that a marine contractor had gone to the defendant's place of business and replaced pilings as they were needed * * * when they became worn for the last several years * * * that Mr. Styron had the contractor in about every year or two to inspect the piling and determine which ones should be replaced, and authorized him to go ahead and replace them.

The defendant testified: "I have never agreed with Mr. Pennington or anyone else to maintain the same slip for the boats. There was a name on the slip by Mr. Pennington's boat which I put there. It was a little plastic tag a couple of inches long. The main purpose for that is that on a weekend we have boats out fishing, and we might have 15 boats out and we have people coming from New

Bern and Washington, and we try not to use somebody else's slip when they are out fishing because some slips are available, and sometimes we have boats at Cape Lookout that won't be in that night, and then I use the man's slip as he is not there, taking it for my own benefit. * * * Practically every boat on the dock has been in practically every slip on the dock."

The plaintiff sued to recover for damages to his boat and the jury answered the issues as follows:

"1. Was the plaintiff's boat, the Bob Cat, damaged by the negligence of the defendant as alleged in the complaint? ·
A: Yes.
"2. If so, how much damage is the plaintiff entitled to recover? A: $1,500.00."

Judgment was signed upon the verdict, and the defendant appealed.

*George H. McNeill for plaintiff appellee.*
*Wheatly & Bennett for defendant appellant.*

PLESS, J.   The plaintiff and the defendant agree that the plaintiff stored his boat with the defendant, and that the defendant was to keep it tied up, pump the rain water out of it, and generally to protect it during the winter. This arrangement created the relation of bailor and bailee between plaintiff and defendant. *Nothing else appearing,* the contract did not constitute defendant an insurer of the safety of plaintiff's boat. The relationship merely imposed upon defendant the duty to exercise ordinary care to protect plaintiff's boat against loss, damage, or destruction, and to return it in as good condition as when he received it. Liability for any damage to the boat while in defendant's possession would depend upon the presence or absence of ordinary negligence on the part of defendant. *Electric Corp. v. Aero Co.,* 263 N.C. 437, 139 S.E. 2d 682.

"A *prima facie* case of actionable negligence, requiring submission of the issue to the jury, is made when the bailor offers evidence tending to show that the property was delivered to the bailee; that the bailee accepted it and thereafter had possession and control of it; and that the bailee failed to return the property or returned it in a damaged condition." *Insurance Co. v. Motors, Inc.,* 240 N.C. 183, 185, 81 S.E. 2d 416, 418.

There was a definite conflict in the pleadings and evidence of the parties as to the conditions under which the plaintiff left his

yacht with the defendants, and as to the circumstances under which the boat was moved from an open slip to a covered one where it was damaged. The plaintiff had alleged that he left the BOB CAT under the defendant's exclusive care and control as a bailee for hire, and the defendant had denied it. The plaintiff testified that he had not given consent to the defendant to move the boat and did not know it was over there until the defendant called him and told him the shed had fallen in. However, the evidence of the defendant is to the contrary, as set forth in the statement of facts.

If the jury should find there was either an express or implied understanding between plaintiff and defendant that plaintiff's boat could be moved from one slip to another at defendant's convenience, defendant's duty remained one of ordinary care, and he would be liable only for failure to exercise such care. If, however, it should find that defendant had agreed to keep plaintiff's boat in a particular place, that is, in the slip in which plaintiff had left it, and that defendant had no authority to move the boat, defendant would be liable for the damage to it irrespective of negligence.

> "It is generally held that if the bailee, without authority, deviates from the contract as to the place of storage or keeping of the property, and a loss occurs which would not have occurred had the property been stored or kept in the place agreed upon, he is liable, even though he is not negligent. This rule regards the bailee as assuming, by his breach of contract, the risk of any injury which would not have resulted had he not committed such breach, even though the place to which he moves the goods is equally safe and proper for the purpose. Where his contract is to keep the property in a particular place, the bailee's liability has been held to be the same notwithstanding he was compelled by force of circumstances to place it elsewhere and in so doing was not guilty of any negligence. In such a case the view has been taken that it is the bailee's duty to notify the bailor and to obtain his consent to the change if he is to avoid liability." 8 Am. Jur. 2d, Bailments § 191.

An unauthorized deviation would therefore make the defendant's liability absolute, and the plaintiff would not be required to prove negligence of any type or degree.

Under the bailor-bailee theory ordinary negligence is the test. We therefore hold that the following excerpts from the charge were not applicable and were likely to be confusing to the jury, which entitles the defendant to a new trial.

In the charge the court said: "The defendant obligated himself when he moved the boat to a greater degree of care than he would have in compliance with the original contract, that is, keeping the boat in the open * * * he put himself in the position of a bailee for his own benefit * * * thus *slight negligence* (emphasis ours) on his part could not relieve him of liability, or, to put it in other words: from the time he moved the boat he was required to use *extraordinary care* (emphasis ours) to see that the subject of the bailment was not damaged."

The defendant sought to show his custom of moving the boats from one slip to another, but the court properly excluded this evidence since no foundation had been laid for it. To be admissible in evidence "a custom must be shown to have been so general that a contracting party will be presumed to have had knowledge of it, in order to make it a part of the contract, in the absence of evidence that he had actual knowledge of it." 8 Am. Jur. 2d, Bailments § 126 (1963). A fuller discussion will be found in *Oil Co. v. Burney,* 174 N.C. 382, 387, 93 S.E. 912.

New trial.