JAMES LAWRENCE SMITH v. BYNUM McRARY, D/B/A McRARY HARLEY-DAVIDSON

No. 91PA82

(Filed 5 October 1982)

1. **Bailment § 3.3— theft of motorcycle from bailee—no contract to keep in certain building**

Plaintiff bailor of a motorcycle failed to offer sufficient evidence of an express or implied contract that defendant bailee would repair and store his motorcycle only in his main building so as to render defendant liable under a contract theory for the loss of plaintiff's motorcycle by theft from a smaller building behind the main building where plaintiff's evidence tended to show only that he delivered the motorcycle to defendant at his main building to be serviced and repaired, that defendant moved the motorcycle to a smaller building without plaintiff's permission, and that the motorcycle was stolen from the smaller building, and there was no evidence that plaintiff and defendant discussed the storage of plaintiff's motorcycle in a particular place.

Smith v. McRary

**2. Rules of Civil Procedure § 15.1— denial of motion to amend complaint—no abuse of discretion**

The trial court did not abuse its discretion in the denial of plaintiff's motion to amend his complaint made about three months before trial where the proposed amendment was no more than surplusage and could not withstand a motion to dismiss for failure to state a claim. Furthermore, even if the denial of the motion were error, plaintiff suffered no prejudice because the facts delineated in the proposed amendment actually were introduced into evidence.

**3. Bailment § 3.1— theft of motorcycle from bailee—instructions on bailee's duty of care**

In plaintiff bailor's action to recover damages for the theft of his motorcycle from defendant bailee's premises, the trial court erred in giving the jury instructions which implied that the absence of a statutory duty requiring defendant to take particular security measures or establishing a standard of care was relevant in determining whether defendant had met his duty of care under negligence principles.

**4. Negligence § 27.1— evidence of insurance properly excluded**

In plaintiff bailor's action to recover damages for the theft of his motorcycle from defendant bailee's premises, plaintiff's testimony that defendant, on an occasion before the instant bailment, told him that he had insurance to cover any theft, offered by plaintiff not to prove that defendant had theft insurance but to show that he did not ask about security measures for his motorcycle because he thought any theft would be covered by insurance, had only slight probative value to the issue being tried by the jury and was properly excluded by the trial court.

Justice MARTIN did not participate in the consideration or decision of this case.

BEFORE *Judge Peter L. Roda* and a jury at the 13 October 1980 Civil Session of BUNCOMBE District Court, plaintiff sought damages for the theft of his motorcycle from defendant's business. The jury found that plaintiff had not been damaged by defendant's negligence, and the trial court ordered the action dismissed. Plaintiff appealed. The Court of Appeals ordered a new trial. 54 N.C. App. 635, 284 S.E. 2d 192 (1981). This Court granted discretionary review on 3 March 1982.

*James Lawrence Smith and Joel B. Stevenson for plaintiff appellee.*

*Harrell & Leake by Larry Leake for defendant appellant.*

EXUM, Justice.

This is an action by a bailor of a motorcycle who seeks to recover for its loss from the bailee from whom it was stolen. The principal question presented is whether plaintiff offered sufficient evidence of an express or implied contract that the bailee would keep the motorcycle in a particular location, the breach of which might render the bailee liable. Disagreeing with the Court of Appeals, we conclude plaintiff did not. We also conclude it was not prejudicial error to deny plaintiff's motion to amend his complaint when the amendment purports, but fails, to state a claim for breach of contract. We agree with the Court of Appeals' conclusion that plaintiff is entitled to a new trial on his negligence claim because of error in the jury instruction on this aspect of the case.

The evidence at trial tended to show the following:

On 29 September 1979 plaintiff brought to defendant's business a motorcycle he had previously purchased from defendant. He took his motorcycle to the service department located in the main building of defendant's business so it could be checked as required under the warranty and receive routine maintenance. The only charge for this service was the cost of consumable items such as oil and oil filters.

While leaving his motorcycle plaintiff noticed a "Butler building" or shed in back of the main building, but it did not occur to him what its use might be. Defendant did not indicate to plaintiff that his motorcycle might be stored in the shed. Plaintiff knew that defendant had a burglar alarm system in the main building because one of defendant's mechanics had told him about it before he initially bought his motorcycle. When he left his motorcycle for servicing, plaintiff did not ask defendant whether the burglar alarm was working or where he was going to keep the motorcycle after servicing it.

Defendant testified as an adverse witness for plaintiff. When plaintiff brought in his motorcycle, defendant did not tell him where it would be stored. Plaintiff never asked where it would be stored, whether the burglar alarm worked, or what kind of locks were used on the doors to the main building.

Defendant attempted to contact plaintiff after his motorcycle was repaired but learned plaintiff was in the hospital and would

not be able to pick it up for a few days. He stored it in the shed because he needed the room in the repair shop. It was stored with its key in the ignition and gas in the tank. On 15 October 1979 defendant discovered that plaintiff's motorcycle and one other had been stolen. He estimated the total value of the stolen property to be $10,000. The shed had been broken into, although the main building, which had nine new motorcycles on display, had not.

Defendant testified that he had installed an automatic lighting system and a burglar alarm system in both the shed and the main building. He also had a chain link fence around the rear of the premises with a fence for the driveway. That fence and the door to the shed were secured with padlocks that were not case-hardened. Defendant's business had been burglarized three times before the theft of plaintiff's motorcycle. Each time it was the main building that had been burglarized. His burglar alarm was installed after the first burglary. It was turned on in his shop for the last two burglaries and the alarm had been cut off in the Asheville Police Department.

Defendant routinely turned on the burglar alarm and locked the padlocks on the fence and shed when he left the shop. He learned, however, on the day the theft was discovered that his alarm system was not working. He periodically checked his alarm by calling the police department, then setting off the alarm to see if they received the signal. He could not remember when he had last checked it before plaintiff's motorcycle was stolen.

The investigating officer testified that he found the lock to the shed and it appeared to have been cut with a bolt cutter. The lock to the gate had also been removed. An expert in preventive security measures testified that he would not recommend any type of lock that was not case-hardened because only case-hardened locks can resist bolt cutters. In addition, he would not recommend a padlock as a security measure.

The following issues were submitted to the jury and answered as indicated:

1. Was the plaintiff damaged by the negligence of the defendant?

ANSWER: No.

2. What damages, if any, is the plaintiff entitled to recover of the defendant?

ANSWER: _____.

[1]  The first question that must be addressed is whether plaintiff offered sufficient evidence of an implied or express contract that defendant would repair and store his motorcycle only in his main building. None of the authorities cited by plaintiff support his argument or the Court of Appeals' holding that plaintiff's proof is sufficient to create a jury issue of an express or implied contract. Plaintiff's evidence tended to show that he delivered the motorcycle to defendant at his main building, that defendant moved the motorcycle to a smaller building without plaintiff's permission, and that the motorcycle was stolen from the smaller building.

In order for a party with the burden of proof to create a jury question in a civil case he must offer enough evidence, when that evidence is viewed most favorably to him, "of each element of the claim so that 'reasonable men may form divergent opinions of its import.' " *Wachovia Bank & Trust Co., N.A. v. Rubish*, 306 N.C. 417, 424, 293 S.E. 2d 749, 754 (1982) (quoting *State Auto. Mutual Ins. Co. v. Smith Dry Cleaners, Inc.*, 285 N.C. 583, 587, 206 S.E. 2d 210, 213 (1974) ). Merely delivering a motorcycle for servicing to a particular building is not sufficient, standing alone, to allow a jury to infer that there is an implied contract between the bailor and the bailee that the motorcycle will at all times be kept in that building, even after the repair has been completed.

The leading North Carolina case in this area, *Pennington v. Styron*, 270 N.C. 80, 153 S.E. 2d 776 (1967), does not stand for the proposition that mere delivery of a vehicle to a particular location gives rise to an implied contract that it will be kept in that location. In *Pennington* the plaintiff "took his boat to the defendant's yacht basin and it was placed in an open slip which he said he had rented . . . . It was identified by a little tag with plaintiff's name on it." *Id.* at 81, 153 S.E. 2d at 777. In order to accommodate a larger yacht, the defendant moved the plaintiff's yacht to another slip and placed the larger yacht in the plaintiff's slip. Subsequently, the plaintiff's yacht was damaged while in the new slip. The defendant testified that he had never agreed with the plaintiff to

maintain a particular slip for his boat, but the Court held that a jury could find the defendant absolutely liable under the plaintiff's evidence if they found "that defendant had agreed to keep plaintiff's boat in a particular place, that is, in the slip in which plaintiff had left it, and that defendant had no authority to move the boat." *Id.* at 84, 153 S.E. 2d at 779.

The case now before us is distinguishable from *Pennington* on at least two bases. First, in *Pennington* the essential purpose of the bailment was to store the plaintiff's boat, not to service and repair it. To achieve that purpose the plaintiff rented a particular space or slip. Second, the space was labeled with the plaintiff's name, and even defendant testified that he would not try to use somebody else's slip to accommodate new boats in the basin if the boat assigned to a given slip was out and likely to be returning soon. *Id.* at 82, 153 S.E. 2d at 778. In the instant case there is no similar evidence that plaintiff delivered his motorcycle to a particular space on defendant's property which had been allocated or labeled for his use distinct from the use of others who brought in their motorcycles for servicing or repair. There is no evidence that plaintiff and defendant even discussed the storage of plaintiff's motorcycle in a particular place.

Plaintiff quotes 8 Am. Jur. 2d, *Bailments* § 202 (1980) to support his argument that proof of mere delivery of the motorcycle to the main building is sufficient evidence from which a jury could imply a contract that it will be kept there. It is true that the cited section contains the following language: "It has been held, in the absence of any express agreement on the subject that an agreement that the property is to be kept at a particular place may be implied from the fact that it was left at such place by the bailor." The only case cited for this principle, *McCurdy v. Wallblom Furniture & Carpet Co.*, 94 Minn. 326, 102 N.W. 873 (1905), however, has a much narrower holding. The plaintiff in *McCurdy* sought to store certain goods in the defendant's store. The defendant explained that the goods would be stored in his warehouse which was located in another part of town. The parties agreed on a charge and the bailor took his goods to the bailee's warehouse and saw them stored in it. Subsequently, the bailee moved the goods to a new place of business without the bailor's consent and they were destroyed by fire. Thus, although the written warehouse receipt did not specify where the goods were to be

kept, there was an express discussion and agreement that they were to be stored in the warehouse to which they were delivered. *Id.* at 327-30, 102 N.W. at 874-75. Plaintiff cites us to no authority, nor were we able to find any, for the principle that mere delivery of goods for repair, without any discussion about the location of the repair or storage, is sufficient to give rise to a finding of an implied contract as to the location.

[2] Related to the question of the sufficiency of plaintiff's evidence is whether there was error in the denial of plaintiff's motion to amend his complaint made on 23 July 1980, about three months before trial. Plaintiff's original complaint stated only a claim based on defendant's alleged negligence. His motion to amend sought to add the following to his complaint:

1. That the Plaintiff realleges and incorporates herein in his second cause of action the paragraphs 1 and 2 of the original Complaint filed on December 10, 1979.

2. That at the time said motorcycle was left with the Defendant, it was delivered to the Defendant at his main office and service building, where the Defendant had a large showroom of new motorcycles and an exhibit of antique and collector motorcycles.

3. That the Plaintiff is informed and believes and therefore, alleges and says that on or about the 12th day of October, 1979, the Defendant moved the Plaintiff's motorcycle from his main office and service building to another structure located behind the main office and service building, and that this movement was made without the knowledge, permission or agreement of the Plaintiff herein.

4. That said motorcycle was not returned to the Plaintiff herein, for the reason that sometime between October 12, 1979, and October 15, 1979, the motorcycle was stolen during a burglary of the small building.

5. That because the Defendant moved the motorcycle from the place where it was bailed to another place for storage without the knowledge or consent of the Plaintiff, the Defendant is absolutely liable for the loss of the Plaintiff's motorcycle.

The motion to amend was denied on 28 August 1980 by Judge Fowler.

Under Rule 15(a) of the North Carolina Rules of Civil Procedure, leave to amend after the statutory time for amending as "a matter of course" has elapsed "shall be freely given when justice so requires." G.S. 1A-1, Rule 15(a). *See Roberts v. Reynolds Memorial Park*, 281 N.C. 48, 187 S.E. 2d 721 (1972). A motion to amend "under Rule 15(a) is addressed to the sound discretion of the trial judge and the denial of such motion is not reviewable absent a clear showing of an abuse of discretion." *Edwards v. Edwards*, 43 N.C. App. 296, 298, 259 S.E. 2d 11, 13 (1979). *See also Carolina Garage, Inc. v. Holston*, 40 N.C. App. 400, 253 S.E. 2d 7 (1979); 3 Moore's Federal Practice ¶ 15.08[4] (2d ed. 1982).

In the instant case the denial of plaintiff's motion to amend was not an abuse of discretion because the proposed amendment is no more than surplusage. The facts it attempts to add, as we have already demonstrated, are insufficient to state a second claim for relief; therefore plaintiff's proposed amendment could not withstand a motion to dismiss for failure to state a claim. Because to grant his motion to amend would be a futile gesture, the denial of his motion was not error. *See, e.g., Collyard v. Washington Capitals*, 477 F. Supp. 1247 (D.C. Minn. 1979); Wright & Miller, Federal Practice and Procedure: Civil § 1487 (1982).

Furthermore, even if the denial were error plaintiff suffered no prejudice because the facts delineated in the proposed amendment actually were introduced into evidence.[1] We believe, as previously discussed, that these facts are not sufficient evidence from which a jury could imply a contract to keep the motorcycle only in the main building. Thus, we conclude that the Court of Appeals erred when it reversed the trial court and ordered a new trial on the theory that defendant's deviation from a contract with plaintiff made him absolutely liable for the theft of plaintiff's motorcycle.

---

1. Under Rule 15(b) of the N.C. Rules of Civil Procedure if evidence is admitted without the objection that it goes to an issue not in the pleadings, and it does in fact raise an issue not in the pleadings and was reasonably understood as doing so by the parties, then the pleadings are regarded as amended to conform to the proof. *Mangum v. Surles*, 281 N.C. 91, 98, 187 S.E. 2d 697, 702 (1972).

[3] We agree with the Court of Appeals' conclusion, however, that plaintiff is entitled to a new trial for error in the instructions on defendant's duty of care. In applying negligence principles to the facts of the given case, the trial court stated:

> Now, in this matter, members of the jury, the plaintiff contends that the defendant was negligent in that his burglar alarm was not working; that the locks he used for both the fence and for the building were not of a proper type, and that he left the key in the ignition. *There is no statute in North Carolina that would require the defendant to do any of these things. There is no law that you cannot—the defendant in this case has violated no law so these would be for your concern only as it applies to the question of 'Was the defendant negligent?'* [Emphasis supplied.]

The trial court was apparently attempting to explain to the jury that there was no North Carolina statute which required defendant to take particular security measures or which established a standard of care. But to a lay juror this instruction may have been confusing, as the Court of Appeals noted, in that it implied the absence of a statutory duty was relevant to determining whether defendant had met his duty of care under negligence principles. Although other parts of the charge correctly state the applicable rules, the challenged portion is sufficiently misleading to be held to be prejudicial error. *See McNair v. Goodwin,* 264 N.C. 146, 147, 141 S.E. 2d 22, 23 (1965) (per curiam).

[4] Because there must be a new trial on the negligence cause of action, we address the only additional question presented which is likely to arise on retrial. Plaintiff asserts that he should have been allowed to testify about a conversation he had with defendant, on an occasion before the instant bailment, in which defendant allegedly told him that he had insurance to cover any theft of plaintiff's motorcycle. Plaintiff argues this evidence was offered not to prove the fact that defendant had theft insurance, but to rebut defendant's testimony that plaintiff had not questioned him about security measures before leaving his motorcycle. Plaintiff sought to explain that he did not ask about such measures because he thought any theft of his motorcycle would be covered by insurance. This testimony, standing alone, had extremely slight probative value in view of the issue to be tried by the jury.

It does no more than confuse this issue for the jury. *Pettiford v. Mayo*, 117 N.C. 27, 23 S.E. 252 (1895). The likelihood that it would play upon the prejudices of the jury greatly outweighs whatever probative value it has. Therefore, the trial court properly excluded this evidence. *Pearce v. Barham*, 267 N.C. 707, 712, 149 S.E. 2d 22, 26 (1966); 1 Brandis on N.C. Evidence, §§ 77, 80 (2d rev. ed. of Stansbury's N.C. Evidence 1982).

For the reasons given, the decision of the Court of Appeals is

Modified and affirmed.

Justice MARTIN did not participate in the consideration or decision of this case.