THOMAS HASSETT v. DIXIE FURNITURE COMPANY, INC.

No. 39PA92

(Filed 12 February 1993)

1. **Contracts § 154 (NCI4th)— breach of contract for personal services—instructions—damages—costs avoided by breach**

   The trial court erred in an action for breach of a personal services contract by instructing the jury that, if defendant breached the contract, it could find that plaintiff was entitled to recover the total amount of payments due as if performance had been rendered. There was evidence that plaintiff would have had a considerable amount of expense had he performed. A party injured by a breach of contract is entitled to be placed

HASSETT v. DIXIE FURNITURE CO.

[333 N.C. 307 (1993)]

in the same position which would have been occupied if the contract had been performed, insofar as possible with money damages, but is not entitled to recover for any cost avoided by the breach of contract.

**Am Jur 2d, Damages § 552.**

2. **Accord and Satisfaction § 1 (NCI4th); Compromise and Settlement § 9 (NCI4th)— breach of personal services contract— accord and satisfaction and compromise and settlement— evidence sufficient**

There was sufficient evidence to submit to the jury the defenses of accord and satisfaction and compromise and settlement in an action for breach of a personal services contract where defendant's president, Young, met with plaintiff and told him that he felt that plaintiff had breached the contract by engaging in design services for another furniture manufacturer; Young testified that he informed plaintiff that he considered the contract to be terminated and that defendant would stop making payments to plaintiff; the parties discussed a settlement under which the defendant would continue to pay the plaintiff at the same rate of commission for four months, at the end of which the contract would be terminated; Young testified that the parties agreed to the accord; plaintiff wrote a letter to Young setting forth his understanding of the terms and asking that defendant prepare a document incorporating its terms; defendant had a contract prepared and mailed to plaintiff but plaintiff claimed that it included additional items not in the agreement and refused to sign; and defendant paid plaintiff a commission for four months during which time plaintiff performed no duties for defendant.

**Am Jur 2d, Accord and Satisfaction § 55; Compromise and Settlement § 46.**

3. **Contracts § 96 (NCI4th)— breach of personal services contract—defenses of waiver, estoppel and ratification not submitted—no error**

The trial court did not err in an action for breach of a personal services contract by not submitting to the jury the defenses of waiver, estoppel and ratification where plaintiff contended that he was entitled to payments under the original contract. He should not be compelled to refuse these payments,

HASSETT v. DIXIE FURNITURE CO.

[333 N.C. 307 (1993)]

which would be in the same amount as the payments under the alleged new contract, at the risk of being estopped to deny the new contract, being held to have waived his rights under the original contract, or to have ratified the new contract. The action of plaintiff in accepting the payments was too ambiguous to support a defense of waiver, estoppel, or ratification.

**Am Jur 2d, Estoppel and Waiver §§ 36, 158.**

4. **Contracts § 154 (NCI4th)— breach of personal services contract — instructions — damages — cost of replacement services — offset for amount to have been paid plaintiff**

The trial court did not err in an action for breach of a personal services contract by instructing the jury that defendant could recover on its counterclaim only in the amount that the expenditure by defendant to replace plaintiff exceeded the amount defendant would have paid plaintiff. This amounted to a peremptory instruction because the replacement cost, $216,666, cannot exceed $325,556, the amount plaintiff would have been paid. To have allowed defendant to recover the amount of the replacement services without reduction for the amounts that were to be paid to plaintiff under the terms of the contract would result in unjust enrichment of the defendant.

**Am Jur 2d, Damages §§ 45, 121.**

5. **Pleadings § 34 (NCI3d)— motion to amend complaint to add party — denied — no abuse of discretion**

The trial court did not abuse its discretion in an action for breach of a personal services contract by denying plaintiff's motion to amend his complaint to add a new party where the motion was heard thirteen months after the action was instituted and only three months before the case was calendared for trial. A new party and a new claim would have been added if the motion had been allowed.

**Am Jur 2d, Pleading § 312.**

**Timeliness of amendments to pleadings made by leave of court under Federal Rule of Civil Procedure 15(a). 4 ALR Fed 123.**

Justice PARKER did not participate in the consideration or decision of this case.

HASSETT v. DIXIE FURNITURE CO.

[333 N.C. 307 (1993)]

On discretionary review pursuant to N.C.G.S. § 7A-31(a) of an opinion of the Court of Appeals, 104 N.C. App. 684, 411 S.E.2d 187 (1991), affirming the judgment for the plaintiff entered by Seay, J., in the Superior Court, Davidson County on 24 May 1990. Heard in the Supreme Court 5 October 1992.

The plaintiff filed this action against the defendant alleging breach of a personal services contract. The defendant filed a counterclaim seeking damages for the plaintiff's alleged failure to provide his services on a full-time and exclusive basis as required under the contract.

The evidence adduced at trial tended to show that the plaintiff and another individual, Charles Taylor, are furniture designers. The plaintiff lives in New Jersey. The defendant is a furniture manufacturer located in North Carolina. On 1 March 1986, the defendant executed a contract with the plaintiff and Taylor whereby the plaintiff and Taylor agreed to perform services for the defendant in connection with the defendant's establishment of an "Import Dining Room Program." Both the plaintiff and Taylor agreed to perform various services for the defendant on a full-time basis. The parties also agreed that the plaintiff was not to perform services related to import dining room furniture for any other entity during the term of the contract which was to run through 30 April 1990. In return for services rendered, the plaintiff and Taylor were to be paid, pursuant to a set formula, a percentage of the defendant's sales.

In late 1986 and early 1987, a dispute developed between the plaintiff and Taylor concerning their individual responsibilities for the performance of their joint obligations under the contract. In the spring of 1987, both parties and Taylor met in North Carolina at which time they agreed to modify the contract with regard to the percentages of the defendant's sales due to the plaintiff and Taylor under the contract. All parties exchanged drafts of their new agreement, but no formal written modification was ever executed. Nevertheless, the parties acted in accordance with this modification until the occurrence of the events which led to this action.

The defendant introduced evidence that it learned that the plaintiff, contrary to the terms of the contract, had performed design services for defendant's competitor and that he was not devoting himself to his duties under the contract on a full-time

HASSETT v. DIXIE FURNITURE CO.

[333 N.C. 307 (1993)]

basis. On 21 October 1987, plaintiff and the defendant's president, Smith Young, met to discuss the plaintiff's work for the defendant's competitor. Mr. Young testified at trial that during this meeting, he and the plaintiff orally agreed to terminate the contract. Mr. Young further testified that he and the plaintiff agreed that the plaintiff would continue to be paid under the terms of the contract for the succeeding four months at which time the parties' obligations under the contract would cease.

On 26 October 1987, the plaintiff sent Mr. Young a letter which stated:

> To review our meeting of October 21st, 1987, in reference to our March 1986 agreement, if I terminate my participation, Dixie Furniture agrees to pay Tom Hassett at the current commission rate of ¾ of 1% of sales for a period of four (4) months, (November, December of 1987, January, February of 1988), and there would be no future conditions or covenants between Tom Hassett and Dixie Furniture.
>
> If that is your understanding then please have your attorney draw up a proper document as soon as possible.

The defendant prepared and executed a termination agreement which he sent to the plaintiff on 16 November 1987. The defendant thereafter made payments to the plaintiff, in accordance with this agreement, through the following four months, ending February 1988. At the end of this four month period, the defendant hired two new furniture designers to perform the duties that had previously been performed by the plaintiff.

The plaintiff contended that this action by the defendant constituted a breach of contract and sought to recover as damages the amount he would have received if he had been allowed to complete the contract. The plaintiff introduced evidence that he would have earned $325,566.00 if the contract had not been breached. In its counterclaim, the defendant sought to recover the costs it incurred as a result of having to obtain replacement services. The defendant contended that if the parties' contract had not been terminated at their meeting on 21 October 1987, or thereafter, the plaintiff breached the contract by performing design services for the defendant's competitor, and that the defendant was entitled to recover the costs it incurred in obtaining replacement services.

The defendant presented evidence that the costs of replacement services totaled $216,666.00.

At the close of all the evidence, the defendant submitted written requests for instructions. The defendant requested an instruction that would require the jury to reduce any award in the plaintiff's favor by the amount of expenses he saved as a result of not having to perform the remainder of the contract. The defendant also requested that the jury be instructed on the affirmative defenses of accord and satisfaction, compromise and settlement, estoppel, waiver and ratification. The trial court refused to give these requested instructions and the jury returned a verdict in favor of the plaintiff awarding damages in the amount of $325,556.00. The Court of Appeals affirmed the judgment of the trial court and this Court allowed the defendant's petition for discretionary review.

*Ben Farmer for plaintiff appellee.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, by Hubert Humphrey, John H. Small and James H. Jeffries IV, for defendant appellant.*

WEBB, Justice.

[1] The appellant's first assignment of error deals with the jury instructions in regard to damages. The court instructed the jury that if it found the defendant had breached the 1 March 1986 contract, it could find that the plaintiff was entitled to recover as damages the total amount of the payments due to the plaintiff as if performance had been rendered under the contract.

There was evidence, some of it uncontradicted, that had the plaintiff performed he would have had a considerable amount of expense, including travel between his home in New Jersey and the defendant's facilities in North Carolina, travel to visit dealers throughout the United States, and trips to the Far East to supervise production. The defendant says it was error not to instruct the jury that the damages must be reduced by the amount of expenses the plaintiff would have incurred if he had performed his duties under the contract. We agree that this was error.

A party injured by a breach of contract is entitled to be placed in the same position he would have occupied if the contract had been performed, insofar as this can be done by an award of money damages. *Service Co. v. Sales Co.*, 259 N.C. 400, 131 S.E.2d 9

## HASSETT v. DIXIE FURNITURE CO.

[333 N.C. 307 (1993)]

(1963). He is not entitled to recover for any cost avoided by the breach of the contract. Professor E. Allan Farnsworth in his treatise on the law of contracts says:

> [a breach of contract] may have a beneficial effect on the injured party by saving him the further expenditure that he would have incurred if he had performed. This saving will be referred to as *cost avoided*. If, for example, the injured party is a builder under a construction contract who stops work after the owner's breach, the additional expenditure he has saved is *cost avoided*.

E. Allan Farnsworth, *Contracts* § 12.9, at 846 (1982).

We have applied this rule in *Peasley v. Coke Co.*, 282 N.C. 585, 194 S.E.2d 133 (1973) and *Tillis v. Cotton Mills and Cotton Mills v. Tillis*, 251 N.C. 359, 111 S.E.2d 606 (1959), by holding that in order to determine damages costs avoided must be deducted from revenue which would have been received if the contract had not been breached.

The appellee argues that pursuant to *Arnold v. Charles Enterprises*, 264 N.C. 92, 141 S.E.2d 14 (1965), expenses he would have incurred if he had been allowed to complete the contract should not be deducted from the amount he would have received in order to determine damages. *Arnold* is not precedent for this case. In that case, we held that the plaintiff's damages for the defendant's breach of a contract by failing to appear for a concert as he had contracted to do did not have to be reduced by the plaintiff's expected expenses. In that case, all expenses incurred by the plaintiff in performing his part of the contract had apparently been paid. There was nothing to be deducted from the damages awarded to the plaintiff.

[2] In its second assignment of error, the defendant contends that the court erred when it failed to charge as requested by the defendant on its defenses of accord and satisfaction, compromise and settlement, estoppel, waiver, and ratification. The question raised by this assignment of error is whether there was sufficient evidence for a jury to find that any of these defenses apply.

> An accord is a contract under which the obligee promises to accept a stated performance in satisfaction of the obligor's existing duty. . . . Not until performance, which is called *satisfac-*

*tion*, however, is the original duty discharged. Discharge in this way is therefore said to be by *accord and satisfaction*.

E. Allan Farnsworth, *Contracts* § 4.24, at 285 (1982) (footnote omitted); *Allgood v. Trust Co.*, 242 N.C. 506, 88 S.E.2d 825 (1955); *Sharpe v. Nationwide Mut. Fire Ins. Co.*, 62 N.C. App. 564, 302 S.E.2d 893, *cert. denied*, 309 N.C. 823, 310 S.E.2d 353 (1983).

Compromise and settlement is provided for by statute and is close kin to accord and satisfaction. N.C.G.S. § 1-540 provides:

> In all claims, or money demands, of whatever kind, and howsoever due, where an agreement is made and accepted for a less amount than that demanded or claimed to be due, in satisfaction thereof, the payment of the less amount according to such agreement in compromise of the whole is a full and complete discharge of the same.

In support of its contention that there was sufficient evidence to submit to the jury on the defenses of accord and satisfaction and compromise and settlement, the defendant relies on the evidence that Mr. Young met with plaintiff and told him that he felt plaintiff had breached the contract by engaging in design services for another furniture manufacturer. Mr. Young testified that he informed the plaintiff that he considered the contract to be terminated and the defendant would stop making payments to the plaintiff. The parties discussed a settlement under which the defendant would continue to pay the plaintiff at the same rate of commission for four months at the end of which time the contract between the parties would be terminated. Mr. Young testified that the parties agreed to this accord.

Following the meeting between the plaintiff and Mr. Young, the plaintiff wrote a letter to Mr. Young setting forth his understanding of the terms of the agreement and asking that the defendant prepare a document incorporating its terms. The defendant had such a contract prepared and mailed an executed copy to the plaintiff. The plaintiff refused to sign the document because, he said, there were things in it which were not part of the agreement. The defendant paid to the plaintiff a commission for four months during which time the plaintiff performed no duties for the defendant.

We hold that this evidence would support a finding by the jury that the parties had reached an accord on the plaintiff's claim against the defendant and the defendant had performed on this

## HASSETT v. DIXIE FURNITURE CO.

[333 N.C. 307 (1993)]

agreement, making it an accord and satisfaction. The jury could find this accord and satisfaction from the evidence that the parties discussed a settlement under which the plaintiff would be relieved of all further duties under his contract with the defendant. The defendant's evidence was that the parties agreed to this accord. The agreement was not put in writing and signed by both parties, but the plaintiff accepted the payments for four months and acknowledged by letter that the parties had agreed to an accord. He did not perform any duties for the defendant. The jury could have also found from this evidence that there was a compromise and settlement. The plaintiff introduced evidence contra to the defendant's evidence. Which evidence to believe should be determined by the jury.

[3] The defendant also contends that from the evidence introduced in this case he was entitled to have submitted to the jury the defenses of waiver, estoppel and ratification. It bases its argument on the evidence that the plaintiff accepted payments for four months, knowing that the defendant contended it had no further obligation to the plaintiff under the original contract. It argues that this evidence of acceptance by the plaintiff of performance by the defendant was evidence from which the jury could conclude there was a waiver of the conditions of the original contract. *See Wheeler v. Wheeler*, 299 N.C. 633, 263 S.E.2d 763 (1980); *Towery v. Dairy*, 237 N.C. 544, 75 S.E.2d 534 (1953); *Lithograph Co. v. Mills*, 222 N.C. 516, 23 S.E.2d 913 (1943).

The defendant also says the acceptance of payments for four months by the plaintiff was a misrepresentation of an existing fact upon which the defendant relied to its detriment. The defendant says the misrepresentation was that the plaintiff was accepting the payments pursuant to the new contract between the parties and the plaintiff is estopped to deny the new contract. *See Harris v. Harris*, 50 N.C. App. 305, 274 S.E.2d 489, *appeal dism'd*, 302 N.C. 397, 279 S.E.2d 351 (1981).

Finally, the defendant says that the jury could find that by accepting the benefits of the new contract, the plaintiff ratified the contract. *See* 17 C.J.S. *Contracts* § 69 (1969). We hold it was not error for the court to refuse to submit the defenses of waiver, estoppel, or ratification. The plaintiff contended he was entitled to the payments under the original contract. He should not be compelled to refuse these payments which would be in the same

amount as the payments under the alleged new contract at the risk of being held to have waived his rights under the original contract, being estopped to deny the new contract, or to have ratified the new contract. In light of these circumstances, we hold that the action of the plaintiff in accepting the payments was too ambiguous to support a defense of waiver, estoppel, or ratification.

[4]   The defendant next contends that the superior court erroneously instructed the jury with regard to the amount of damages recoverable on its counterclaim. The defendant sought to recover $216,666.00, the amount it paid to two designers it hired to perform the services that would have been performed by the plaintiff. The court instructed the jury that it could award damages only in an amount that the expenditure of the defendant to replace the plaintiff exceeded $325,556.00.

The defendant argues that the court's charge on this feature of the case amounted to a peremptory instruction because $216,666.00 cannot exceed $325,556.00. We agree that the court gave what amounted to a peremptory instruction. If there was error, however, it was in submitting the counterclaim to the jury. The evidence showed defendant was not damaged by the plaintiff's breach of the contract, if there was a breach.

There was no conflict in the evidence concerning the plaintiff's compensation rate under the contract. Both the plaintiff and the defendant's president testified that under the contract, as modified in March of 1986, the defendant was to be paid at the rate of ¾ of 1% of the defendant's sales. In addition, the parties stipulated that the defendant's monthly sales under the defendant's "Import Dining Room Program" for the period of March 1988 through April 1990 totaled $43,407,518.00. Thus, the total amount the defendant would have paid the plaintiff under the contract between March 1988 and April 1990, was $325,556.00 ($325,556.00 = .0075% of $43,407,518.00). Thus, the total amount of commissions the defendant would have paid under the contract if it had been fully performed was not a fact in issue.

As stated above, a party injured by a breach of contract is entitled to be placed as much as possible in the same position it would have occupied if not for the other party's breach, but the injured party is not to be unduly enriched. *Troitino v. Goodman*, 225 N.C. 406, 35 S.E.2d 277 (1945). Here, the defendant, if not for the plaintiff's alleged breach, would have paid the plaintiff

$325,556.00 during the remainder of the contract. The defendant hired two furniture designers to replace the plaintiff because of the plaintiff's alleged breach. The plaintiff paid these designers a total of $216,666.00 for their replacement services.

A party seeking damages for breach of a contract to perform services, where the injured party has obtained replacement services, is only entitled to recover as money damages the amount by which the cost of the replacement services exceeded the cost of the services that were to be provided under the contract. *See Norwood v. Carter*, 242 N.C. 152, 87 S.E.2d 2 (1955). To allow the defendant to recover the amount of these replacement services without reduction for the amounts that were to be paid to the plaintiff under the terms of the contract would result in an unjust enrichment of the defendant. This rule is the counterpart of the rule cited above which requires a party claiming damages for breach of contract for the performance of services to reduce his damages by the costs and expenses he was able to save in not performing those services.

We overrule this assignment of error.

[5] The plaintiff assigns error to the denial of his motion to amend his complaint to add a new party. The plaintiff made the motion to make Smith Young a party defendant and to allege unfair and deceptive trade practices. We agree with the Court of Appeals that the court did not abuse its discretion by denying this motion. The motion was heard thirteen months after the action was instituted and only three months before it was calendared for trial. If the motion had been allowed, a new party and a new claim would have been added. This supports the court's conclusion that the amendment "would cause undue delay in the trial of this matter and prejudice" the defendant. The court did not abuse its discretion by denying this motion. *News and Observer Publishing Co. v. Poole*, 330 N.C. 465, 412 S.E.2d 7 (1992); *Smith v. McRary*, 306 N.C. 664, 295 S.E.2d 444 (1982); *Calloway v. Motor Co.*, 281 N.C. 496, 189 S.E.2d 484 (1972).

For errors committed in the trial, we reverse the Court of Appeals and order a new trial.

NEW TRIAL.

Justice PARKER did not participate in the consideration or decision of this case.