***********
The undersigned have reviewed the prior Decision and Order based upon the record of the proceedings before Chief Deputy Commissioner Gheen. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives or amend the Decision and Order.
 ***********
The following documents were introduced into evidence by stipulation of the parties at trial:
 EXHIBITS
1. Plaintiff's Exhibit #1: Personal Property Inventory.
2. Plaintiff's Exhibit #2: Disposition of Unauthorized Property form, PCI-502.
3. Plaintiff's Exhibit #3: Letter from James T. Hairston (hereinafter "Hairston") to Joseph G. Pickelsimer (hereinafter "Pickelsimer").
4. Plaintiff's Exhibit #4: Letter from Captain Steven E. Foutz (hereinafter "Capt. Foutz") to Hairston dated February 22, 2001.
5. Plaintiff's Exhibit #5: Piedmont Correctional Institution (hereinafter "PCI") Daily Shipment Detail Report dated January 5, 2001.
6. Plaintiff's Exhibit #6: United Parcel Service (hereinafter "PCI") Delivery Notifications, two in number, dated February 14, 2001.
7. Plaintiff's Exhibit #7: Letter from Hairston to Capt. Foutz dated February 26, 2001.
8. Plaintiff's Exhibit #8: Letter from Capt. Foutz to Hairston dated February 22, 2001.
9. Plaintiff's Exhibit #9: Letter from Hairston to Capt. Foutz dated April 12, 2002.
10. Plaintiff's Exhibit #10: Letter from Hairston to Pickelsimer dated March 31, 2001.
11. Plaintiff's Exhibit #11: Letter from Capt. Foutz to Hairston dated April 4, 2001.
12. Plaintiff's Exhibit #12: Undated letter from L. McJunkin, Mailroom Officer at PCI (hereinafter "McJunkin") to Hairston.
13. Plaintiff's Exhibit #13: Letter from Hairston to McJunkin dated April 23, 2001.
14. Plaintiff's Exhibit #14: Letter from Hairston to McJunkin dated April 28, 2001.
15. Defendant's Exhibit #1: UPS Claims Settlement form dated April 25, 2001.
16. Defendant's Exhibit #2: UPS Claims Settlement form dated May 8, 2001.
 ***********
Based upon the evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. On January 5, 2001 Hairston was incarcerated at the Davidson County Detention Center after being transferred to the jurisdiction of the North Carolina Department of Correction (hereinafter "NCDOC") at PCI (hereinafter "PCI") to serve a term of imprisonment.
2. Hairston arrived at PCI with the personal property listed on Plaintiff's Exhibit #1.
3. Hairston's possession of the personal property listed in Plaintiff's Exhibit #1 is unauthorized under uniform policies adopted by NCDOC.
4. NCDOC policy for unauthorized personal property permits two dispositions of the property: (a) mailing the unauthorized personal property to an individual named by the inmate, or (b) donation of the personal property to a charitable organization. If an inmate elects to mail the personal property to an individual, the inmate is responsible for the cost of shipping. The specific terms of NCDOC policy provide that the shipper, UPS in the present case, insures each box of materials up to One Hundred Dollars. NCDOC policy specifically provides that the inmate must insure personal property in excess of One Hundred Dollars.
5. Hairston elected to mail his property to an individual as evidenced on the PCI-502 Form provided by NCDOC. Correction Officers did not notify Hairston of the limited liability of UPS or that Hairston could insure the value of his personal property exceeding One Hundred Dollars.
6. The NCDOC form contains no notification of NCDOC's policy as to limited liability or an inmate's option to insure shipped personal property for amounts in excess of One Hundred Dollars.
7. NCDOC, pursuant to Form PCI-502, took exclusive possession of Hairston's personal property. NCDOC packed the personal property in two boxes and delivered the two boxes to UPS for shipment, collecting the cost of shipping from Hairston. The packages were property addressed.
8. UPS, despite initial representations that Hairston's personal property was delivered as instructed, lost both boxes.
9. PCI Correction Officers filed claims with UPS for $209.13, representing One Hundred Dollars for each box shipped and the cost of shipping both boxes incurred by Hairston.
10. Hairston learned of the liability limits and NCDOC policy for purchasing additional insurance during the claim process with UPS. The greater weight of the evidence establishes that Hairston had not had prior experiences from which he could have known of NCDOC's policy.
11. Hairston contends in his Affidavit damages in the amount of Seven Hundred Dollars.
12. At trial, and after an explanation of damages based upon "fair market value," the evidence establishes that fair market value for Hairston's personal property is Three Hundred and Fifty-five Dollars.
13. The greater weight of the evidence establishes that PCI Correction Officers were negligent in failing to inform Hairston of NCDOC policy.
14. The evidence establishes that Hairston had sufficient funds upon his admission to PCI to purchase insurance for his personal property and would have done so had he been advised of NCDOC policy.
 *********** CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 148-18.1 clearly permits the NCDOC to confiscate items of contraband such as Hairston possessed:
 Any item of personal property which a prisoner in any correctional facility is prohibited from possessing by State law or which is not authorized by rules adopted by the Secretary of Correction shall, when found in the possession of a prisoner, be confiscated and destroyed or otherwise disposed of as the Secretary may direct. Any unauthorized funds confiscated under this section or funds from the sale of confiscated property shall be deposited to Inmate Welfare Fund maintained by the Department of Correction.
Price v. Davis, 132 N.C. App. 556, 512 S.E.2d 783 (1999) (discussing legal implications of confiscation of personal property items under similar circumstances in the contest of sovereign immunity and42 U.S.C.A. 1983 as to NCDOC officers in their official and individual capacities.); Re Petition of Smith, 82 N.C. App. 107, 345 S.E.2d 423
(1986). In the context of the present controversy, the NCDOC properly adopted rules providing Hairston the option of mailing contraband items of personal property to an individual of Hairston's choosing or donating the personal property to charity. N.C. Gen. Stat. § 148-18.1.
2. NCDOC's acceptance of Hairston's personal property for shipping was a bailment. Taylor v. North Carolina Dept. of Correction (I.C. File No.: TA-13469, August 22, 1995). Correction Officers took exclusive possession of Hairston's personal property for the purpose of executing shipment. The bailment was one of mutual benefit to both parties; NCDOC's rule eliminated need for storage, destruction or sale of the personal property confiscated and providing Hairston an alternative to destruction of his personal property. Correction Officers owed Hairston a reasonable duty of care under these circumstances. Pennington v. Styron, 270 N.C. 80,153 S.E.2d 776 (1967).
3. NCDOC Correction Officers breached the applicable duty of care by failing to inform Hairston of NCDOC policy regarding limited liability and permitting the inmate to insure the value of personal property to be shipped in excess of One Hundred Dollars. It was reasonably foreseeable that should a shipment not be insured, its loss could result in damage to Hairston. Hairston was not contrubutorily negligent, as he had no prior actual or constructive knowledge of the applicable policy. N.C. Gen. Stat. § 143-299, et. seq.
4. The fair market value of the personal property on the date of its delivery to NCDOC's possession, Wilson v. Posey, 219 N.C. 261,13 S.E.2d 416 (1941), is Three Hundred and Fifty-five Dollars. NCDOC recovered Two Hundred Dollars from the shipping agent, paying that amount directly to Hairston, leaving a net loss to Hairston of One Hundred and Fifty-Five Dollars.
 ***********
The forgoing Findings of Fact and Conclusions of Law engender the following:
 ORDER
1. Hairston shall have and recover the sum of One Hundred and Fifty-five Dollars from NCDOC and NCDOC shall pay the same to Hairston.
2. No costs are taxed as Hairston was permitted to sue in pauper.
This the 19th day of March 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN